No. 03-462

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 306

EDNA N. NASCA,

              Plaintiff,

     v.

DAVE HULL, DON OVITT, BILL BUCKNER, d/b/a
QUALITY USED CARS OF HAMILTON,

              Defendants, Third-Party Plaintiffs, and Appellants,

     v.

JOHN BLAYDEN, individually, and THE HERNDON
INSURANCE AGENCY, INC., an Idaho corporation,

              Third-Party Defendants and Respondents.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
                      In and For the County of Ravalli, Cause No. DV-01-308,
                      Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

       For Appellants:

           Reid J. Perkins, Worden & Thane, P.C., Missoula, Montana

       For Respondents:

           Bruce A. Fredrickson and Kimberly S. More, Crowley, Haughey, Hanson,
           Toole & Dietrich, Kalispell, Montana

           John D. Greef, Attorney at Law, Hamilton, Montana

                      Submitted on Briefs:  January 6, 2004
                                Decided:  November 4,
2004

Filed:

_____
                  Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Dave Hull, Don Ovitt, and Bill Buckner, d/b/a Quality Used Cars of Hamilton ("Appellants" or "Quality"), appeal from the judgment entered by the Twenty-First Judicial District Court, Ravalli County, which dismissed Appellants' third-party complaint against John Blayden and the Herndon Insurance Agency, Inc., an Idaho Corporation ("Respondents"). We reverse and remand.

¶2 We rephrase the issue on appeal as follows:

¶3 Did the District Court err in dismissing Quality's complaint on grounds that the exercise of specific personal jurisdiction over Respondents would violate due process?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 The parties dispute the status of Quality as a business entity, whether a Montana *de facto* partnership or corporation. The District Court did not address the issue, although the complaint defined Quality as "a car dealership located in Hamilton, Montana." We also note that the complaint treats Quality as an unspecified business entity which had Montana employees, sustained damages, and pursued recovery from the Respondents. During the course of the litigation, Quality was incorporated as a Montana corporation. Regardless of its particular status, there is no question that Quality is a business entity which operated a car dealership in Montana during the events which gave rise to this litigation. As such, we will refer to Quality as a business entity herein.

¶5 Prior to obtaining the Quality dealership, Hull, Ovitt, and Buckner owned interests in dealerships in Idaho and Butte, Montana. During this time, Appellants became involved

2

with Blayden, who, in addition to being the president and an agent for the Herndon Insurance Agency, was a salesman at one of the Appellants' Idaho dealerships. Seeking to insure its dealerships, Appellants requested Blayden to procure insurance coverage, including workers' compensation coverage, for all its dealerships, including its Montana dealership in Butte. Blayden responded to the request, and compiled a list of employees from both the Idaho and Montana dealerships for purposes of calculating workers' compensation premiums. Blayden then ostensibly procured insurance coverage for all the dealerships, believing the coverage included workers' compensation insurance for the Appellants' Butte employees. Appellants paid premiums based on the number of their employees. At all times, and upon their request of Blayden to procure insurance and Blayden's representations, Appellants believed that its Montana employees were covered by workers' compensation insurance. Blayden did not indicate he could not obtain coverage for Appellants' employees, and Appellants allege that Blayden negligently believed that he was licensed and authorized to sell workers' compensation insurance for Montana employees, but that, in fact, he was not.

¶6  In August 1998, after selling their Butte dealership, Appellants obtained the Quality dealership, located in Hamilton. Blayden then assisted the Appellants in acquiring a Montana motor vehicle dealer bond for Quality from Western Surety Company. A dealership is required to obtain a motor vehicle dealer bond pursuant to Montana statute to insure third parties will be compensated if they suffer damages due to a dealership's unlawful conduct. *See* § 61-4-101(7), MCA. Thereafter, Blayden corresponded with Quality regarding renewal of the bond and solicited further business from Appellants. According to

3

their complaint, Appellants' belief that they had procured, through Blayden, workers' compensation coverage for the employees of the Quality dealership is based upon their continued payment of premiums assessed for their Montana employees.

¶7     On September 13, 2000, Edna Nasca ("Nasca"), an employee at the Hamilton dealership, fell from a truck bed and was injured. Shortly after the accident, the State of Montana informed Quality that its employees were not covered by workers' compensation insurance. However, by then, Quality had been alerted to the failure to procure workers' compensation insurance. A few days before Nasca's accident, Rex Williams ("Williams"), an insurance agent who was attempting to acquire Quality's insurance business, discovered that Quality did not actually have workers' compensation coverage in force. Quality immediately requested Williams to secure such coverage, but unfortunately, Nasca injured herself in the interim. In the course of his work for Quality, Williams questioned Blayden regarding Quality's workers' compensation coverage, and Blayden replied he believed that Quality's Montana employees were insured under the Idaho policy he had procured.

¶8     On October 22, 2001, Nasca filed a complaint against Quality for workers' compensation benefits she would have been entitled to had Quality been insured. Nasca also filed a claim for compensation with Montana's Uninsured Employers Fund ("UEF"). Subsequently, the parties entered into a settlement agreement. Quality agreed to reimburse UEF, pay for certain of Nasca's medical costs, and pay for Nasca's attorney fees. In return, Nasca agreed to dismiss both her civil suit and workers' compensation claim.

4

¶9    On February 1, 2003, Quality filed a third-party complaint against the Respondents, alleging Blayden had breached their contract when he failed to procure workers' compensation coverage for Quality's employees and had committed negligent acts, omissions and representations, and seeking indemnification for the cost of Nasca's settlement. On April 1, 2003, Respondents filed a Rule 12(b)(2), M.R.Civ.P., motion to dismiss for lack of jurisdiction. Respondents argued that, at most, they merely assisted Quality in obtaining a Montana motor vehicle dealer bond from Western Surety Company.

¶10    On May 13, 2003, Nasca and Quality filed a Stipulation for Dismissal of Nasca's claims, as they had then been settled. The District Court then granted Respondents' Motion to Dismiss, concluding that, with Nasca's dismissal, no Montana parties remained in the action, and thus, exercising jurisdiction over the Respondents, who were Idaho residents, would violate due process. Quality appeals.

### *STANDARD OF REVIEW*

¶11    A district court's determination not to exercise jurisdiction on the basis of due process is a constitutional question. "A court's resolution of an issue involving a question of constitutional law is a conclusion of law, which we review to determine whether the conclusion is correct." *City of Missoula v. Robertson,* 2000 MT 52, ¶ 14, 298 Mont. 419, ¶ 14, 998 P.2d 144, ¶ 14*; see also Cimmaron Corp. v. Smith*, 2003 MT 73, ¶ 8, 315 Mont. 1, ¶ 8, 67 P.3d 258, ¶ 8 (our review of a "district court's determination that it lacks jurisdiction is a conclusion of law, which we review to ascertain whether the court's interpretation of the law is correct"). "Motions to dismiss are construed in a light most

favorable to the nonmoving party and should not be granted unless, taking all well-plead allegations of fact as true, it appears beyond a doubt that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief." *Threlkeld v. Colorado*, 2000 MT 369, ¶ 7, 303 Mont. 432, ¶ 7, 16 P.3d 359, ¶ 7. "Generally, a court should determine jurisdiction only on the necessary jurisdictional facts and not on the merits of the case." *Seal v. Hart*, 2002 MT 149, ¶ 23, 310 Mont. 307, ¶ 23, 50 P.3d 522, ¶ 23.

## *DISCUSSION*

¶12 **Did the District Court err in dismissing Quality's complaint on grounds that the exercise of specific personal jurisdiction over Respondents would violate due process?**

¶13 In *Cimmaron*, ¶ 10, we held that to determine whether a district court may exercise specific personal jurisdiction over a nonresident defendant involves a two-part analysis, first determining whether jurisdiction exists pursuant to Rule 4(B)(1), M.R.Civ.P., and second, whether the court's exercise of jurisdiction comports with due process.

¶14 Rule 4B(1), M.R.Civ.P., Montana's "long-arm" provision, states that:

> All persons found within the State of Montana are subject to the jurisdiction of the courts of this State. In addition, any person is subject to the jurisdiction of the courts of this State as to any claim for relief arising from the doing personally, through an employee, or through an agent, of any of the following acts:
> (a) the transaction of any business within this state;
> (b) the commission of any act which results in accrual within this state of a tort action;
> (c) the ownership, use or possession of any property, or of any interest therein, situated within this state;
> (d) contracting to insure any person, property or risk located within this state at the time of contracting;
> (e) entering into a contract for services to be rendered or for materials to be furnished in this state by such person; or

(f) acting as director, manager, trustee, or other officer of any corporation organized under the laws of, or having its principal place of business within this state, or as personal representative of any estate within this state.

¶15 In its order, the District Court concluded that Respondents' actions fell within Rule 4(B)(1)(a) and (d), M.R.Civ.P., subjecting them to this state's specific jurisdiction, but further determined that Montana's exercise of jurisdiction would violate Respondents' due process rights. While Quality challenges the District Court's holding, Respondents, in addition to defending the court's holding, also argue the court erred when it determined that Montana had specific jurisdiction over them under the first prong of the test. In response, Quality asserts that Respondents' failure to file a cross-appeal from the District Court's conclusion bars our review of that argument. We first take up this issue.

¶16 Relying on *Rouse v. Anaconda-Deer Lodge County* (1991), 250 Mont. 1, 9, 817 P.2d 690, 695, *overruled by Stratemeyer v. Lincoln County* (1996), 276 Mont. 67, 915 P.2d 175; *Silva v. City of Columbia Falls* (1993), 258 Mont. 329, 332-33, 852 P.2d 671, 674; and *Bond v. City of Phillipsburg*, 2003 MT 74, ¶ 9, 315 Mont. 7, ¶ 9, 67 P.3d 255, ¶ 9, Quality argues that whether Montana has specific personal jurisdiction pursuant to Rule 4(B)(1), M.R.Civ.P., is "separate and distinct" from the District Court's due process analysis, and, therefore, a cross-appeal was necessary to preserve the issue on appeal. Respondents contend that whether Montana specific jurisdiction over them was an integral part of the District Court's jurisdictional analysis, is an argument they raised in the District Court, and does not require a cross-appeal to preserve.

7

¶17     Quality correctly notes that this Court has required defendants to file a cross-appeal on matters which are "separate and distinct" from those raised by an appellant on review. However, unlike the arguments this Court declined to consider in *Rouse*, *Silva*, and *Bond*, Respondents' challenge to the District Court's conclusion on specific jurisdiction is not "separate and distinct" from the issue raised by Quality on appeal.  The District Court concluded that it had specific jurisdiction, but determined that the exercise thereof would violate Respondents' due process rights.  Thus, the court's determination of specific jurisdiction was a sub-part of the entire analysis required of the court.  *See Cimmaron*, ¶ 10 (if the district court concludes personal jurisdiction fails to exist, further analysis of defendant's due process rights is unnecessary).  Without concluding that specific jurisdiction existed over Respondents, the District Court would never have reached the due process element which Quality challenges on appeal.

¶18     Further, we have held "[as a] general rule . . . a cross-appeal is not necessary to enable a prevailing party 'to defend its judgment on any ground properly raised below whether or not that ground was relied upon, rejected, or even considered by the District Court' . . . ." *Robertson*, ¶ 20 (quoting *Washington v. Yakima Indian Nation* (1979), 439 U.S. 463, 478, 99 S.Ct. 740, 750, 58 L.Ed.2d 740, 743).  Here, Respondents are the prevailing party in the District Court's ultimate determination of the two-part personal jurisdiction test.  Thus, they are entitled to defend that determination without filing a cross-appeal, because the issue of specific jurisdiction over them was raised in–and rejected by–the District Court.  Should Respondents prevail in defending their judgment on the first part of the test, via this Court's

8

reversal of the District Court's determination that it had specific jurisdiction over them, the Appellants' issue on appeal would be moot. Based on this authority, we conclude that Respondents' challenge to the District Court's conclusion that Montana had specific jurisdiction is not "separate and distinct" from the issue raised by Appellants, and therefore, Respondents retain the right to challenge this conclusion without filing a cross-appeal. We then turn to the issues raised herein.

**Specific personal jurisdiction**

¶19 Rule 4B(1), M.R.Civ.P., incorporates the principles of both general and specific jurisdiction. *Cimmaron*, ¶ 12. As the District Court noted, the first sentence of the statute deals with the question of general jurisdiction, that is, whether the party can be found within the State. However, general jurisdiction is not at issue in this matter. The parties stipulated that Respondents are residents of the State of Idaho. Thus, at issue is the remainder of Rule 4B(1), M.R.Civ.P., addressing specific personal jurisdiction.

¶20 Respondents argue the District Court erred in concluding that Montana had specific jurisdiction, asserting they neither transacted business nor sold insurance coverage in the State of Montana which would bring them under the provisions of either paragraph (1)(a) or paragraph (1)(d) of Rule 4B. Respondents argue that they merely provided Quality with assistance in securing a Montana motor vehicle dealer bond from Western Security Company, as neither of the Respondents were licensed to insure Montana risk, and point out that Quality's claims do not arise out of the purchase of this bond. Respondents further offer that they did not maintain offices, employees, or real property in Montana, nor advertised,

9

maintained a telephone listing or solicited referrals in Montana, and thus, did not maintain the "minimum contacts" necessary to establish jurisdiction over them in this state. Lastly, Respondents contend that Quality did not request Blayden to procure workers' compensation insurance for its Montana employees.

¶21 Appellants counter that Respondents are understating their involvement in Montana and minimizing the significance of the motor vehicle dealer bond transaction. They argue that consideration of all of Respondents' in-state activities reveals that Respondents were transacting business within the state, and that their claims arose from the business Respondents conducted with Quality in Montana. Further, they insist that they had entrusted the procurement of workers' compensation for Quality's Montana employees with Blayden, that he had represented the coverage existed, and that they had paid premiums based upon the number of their Montana employees.

¶22 The District Court rejected Respondents' arguments, finding significance in Respondents' procurement of Quality's motor vehicle dealer bond:

> While the Motor Vehicle Dealer Bond is not the policy allegedly issued by Blayden and/or the Herndon Agency from which this transaction arises, it does offer proof that Blayden and/or the Herndon Agency were transacting business within the State of Montana, as well as contracting to insure a risk located within Montana at the time of contracting.

¶23 The District Court further rejected Respondents' contention that they were never instructed to procure workers' compensation for Quality's Montana employees. Noting that Appellants' complaint alleged that Blayden did not believe Montana workers' compensation coverage was necessary because he believed or misrepresented that the Idaho policy would

10

provide such coverage, the District Court concluded that Respondents had failed to demonstrate that Appellants could prove no set of facts which would entitle them to relief pursuant to the allegations of their complaint. Although Respondents complain that the District Court failed to lay the burden upon Appellants to establish their claim, we conclude herein that Appellants met their burden.

¶24     In *Seal,* we addressed the application of Rule 4B jurisdictional principles upon an out-of-state insurance agent. First, we held that Rule 4B(1)(d), applied not only to insurance companies, but to insurance agents, noting that "[i]t follows that since [the insurance broker] was supposed to obtain insurance for 'property or risk located within th[e] Commonwealth at the time of contracting,' jurisdiction can properly be maintained . . . ." *Seal*, ¶ 21 (quoting *Cornell & Co. v. Home Ins. Cos.* (E.D.Pa. 1995), 1995 WL 46618, \*3). We further held that exercise of jurisdiction over the out of state insurance agent

> simply requires that the claim for relief arise out of the contracting to insure any person, property, or risk located within Montana at the time of contracting. "Arising from," within this context, has been defined as a direct affiliation, nexus, or substantial connection between the basis for the cause of action and the act which falls within the long-arm statute.

*Seal*, ¶ 23 (citation omitted). Finally, we concluded that the jurisdiction over the out-of-state defendant had been established under the plaintiff's complaint, which alleged "that [defendant] had a contractual duty to insure the goods against loss or damage, [defendant] breached her duty to procure the respective insurance, and [plaintiff] suffered a loss as a result of [defendant's] breach. At their core, the allegations in the complaint derived from

11

the alleged act." *Seal*, ¶ 24. We further noted that jurisdiction was established by the defendant's knowledge that the goods to be insured were located in Montana. *Seal*, ¶ 24.

¶25 The Appellants' third-party complaint contains the same essential allegations as contained in the complaint in *Seal*. Further, Respondents' relationship with Quality exceeded simple knowledge of Quality's business, which we found sufficient in *Seal*. *Seal*, ¶ 24. Respondents were actively providing insurance services and receiving premium payments from Quality. Although Respondents contest Quality's assertions regarding their obligation to procure workers' compensation coverage, that is an issue of fact on the merits of the claims that does not diminish either of the District Court's findings that Quality's claims arose from (1) the transaction of business in Montana by Respondents, thus satisfying Rule 4B(1)(a), and (2) contracting to insure risk located within this state, satisfying Rule 4B(1)(d).

Thus, we conclude the District Court correctly held that Respondents' actions fell within the plain language of Rule 4(B)(1)(a) and (d), M.R.Civ.P., subjecting them to this state's specific jurisdiction.

**Due process**

¶26 Under the second part of the test, Appellants argue that the District Court erred in concluding that the exercise of jurisdiction over Respondents did not comport with due process. In *Simmons Oil Corp. v. Holly Corp.* (1990), 244 Mont. 75, 83, 796 P.2d 189, 194, we adopted the Ninth Circuit Court of Appeal's three-part test for determining whether the exercise of jurisdiction comports with due process:

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the laws;
(2) The claim must be one which arises out of or results from the defendant's forum-related activities; and
(3) The exercise of jurisdiction must be reasonable.

¶27 As we noted in *Simmons*, "a plaintiff is not required to demonstrate each of the above three elements to establish jurisdiction." Rather, "once a plaintiff shows that the defendant has purposefully availed itself of the privileges of conducting activities [in this state], a presumption of reasonableness arises, which the defendant can only overcome by 'presenting a compelling case that jurisdiction would be unreasonable.'" *Simmons*, 244 Mont. at 85, 796 P.2d at 195 (quoting *Brand v. Menlove Dodge* (9th Cir.1986), 796 F.2d 1070, 1074). We will address each element of the due process test in turn.

¶28 *Purposefully availing*. In *Simmons*, 244 Mont. at 86, 796 P.2d at 195, we stated a nonresident defendant taking voluntary action designed to have an effect in the State of Montana purposefully avails itself of the benefits and protections Montana law provides, and thus, should reasonably anticipate being haled into court in this state. Respondents assert their actions were neither voluntary nor directed to take advantage of the benefits and protections of the law of this state, noting that they neither had offices, employees, or real property in this state, nor advertised, maintained a telephone listing or solicited referrals in this state. However, Respondents fail to fully acknowledge the effect which the allegations of Blayden's alleged negligence and misrepresentations, if true, had within this state. There can be no doubt that Blayden was commercially engaged with Quality. A commercial

13

transaction was consummated between the parties which resulted in the payment of monies by Quality that profited Respondents. Thereafter, Quality, a Montana business, Nasca, a Montana worker, and the UEF, a state agency, were substantially burdened by Quality's lack of coverage, which was occasioned by Blayden's alleged negligence and misrepresentation.

¶29 The District Court determined that this element favored the exercise of jurisdiction. Finding that Respondents had engaged in "some transaction" with Quality in Montana, the District Court concluded that Respondents had thus purposefully availed themselves to the privilege of conducting activities in Montana. We concur. Therefore, a presumption arises that exercise of jurisdiction over Respondents is reasonable, which Respondents can overcome only by demonstrating with compelling reasons that the exercise of jurisdiction would be unreasonable. *Simmons*, 244 Mont. at 85, 796 P.2d at 195.

¶30 *Arising out of forum-related activities.* The District Court concluded that this factor also favored the exercise of jurisdiction over the Respondents. Respondents object to the District Court's conclusion, citing *Doe v. Am. Nat'l Red Cross* (9th Cir. 1997), 112 F.3d 1048, 1051, which held that a claim does not arise out of the forum if, "but for" the defendant's activities therein, the claim would not have occurred. Using this test, Respondents argue that the District Court "was required to determine that 'but-for' Blayden and the Herndon Agency's assistance in obtaining a motor vehicle bond, Blayden and the Herndon Agency would have provided Montana Workers' Compensation insurance to Quality."

14

¶31 However, Respondents' argument completely ignores the allegations in the complaint. As the District Court concluded, the Appellants' claims of breach of contract, negligence and misrepresentation arise out of Respondents' alleged promise to procure workers' compensation insurance for Quality's employees, not Respondents' actions in procuring the motor vehicle dealer bond for Quality. While the motor vehicle dealer bond is evidence of Respondents' business activity within this state, the complaint's allegations go beyond that transaction. In *Simmons*, 244 Mont. at 87, 796 P.2d at 196, we stated that to ascertain whether a cause of action arises out of a defendant's forum-related activity, we would review the entire chain of events leading up to the final act resulting in the claim. Thus, "but-for" Respondents' alleged breach, negligence and misrepresentation, Quality would not have relied upon Respondents' assurance, and could have procured insurance elsewhere, which Quality did upon learning of the absence of coverage. Further, "but-for" Respondents' alleged Montana actions, Nasca's claims against Quality and the UEF, and subsequently, Quality's claim for indemnification from Respondents, would not have occurred.

¶32 *Reasonableness.* The exercise of jurisdiction must be reasonable to comport with due process. In *Simmons*, 244 Mont. at 87-88, 796 P.2d at 197, we enumerated several factors to consider when examining the reasonableness of jurisdiction:

> (1) The extent of the defendant's purposeful interjection into Montana;
> (2) The burden on the defendant of defending in Montana;
> (3) The extent of conflict with the sovereignty of the defendant's state;
> (4) Montana's interest in adjudicating the dispute;
> (5) The most efficient resolution of the controversy;
> (6) The importance of Montana to the plaintiff's interest in convenient and effective relief; and
> (7) The existence of an alternative forum.

15

¶33 Further, we noted that "[t]he above factors are not mandatory tests, each of which the plaintiff must pass in order for the court to assume jurisdiction. Rather, the factors simply illustrate the concepts of fundamental fairness, which must be considered in each jurisdictional analysis." *Simmons*, 244 Mont. at 88, 796 P.2d at 197.

¶34 After considering these factors, the District Court concluded that the exercise of jurisdiction over Respondents was unreasonable. However, the District Court did not indicate whether it had considered that, by its determinations that Respondents had purposely availed themselves to the forum and that Quality's claims arose from the Respondents' forum-related activities, a presumption in favor of reasonableness had arisen. With that presumption, Respondents bore the burden of demonstrating by compelling reasons that the exercise of jurisdiction would be unreasonable. *Simmons*, 244 Mont. at 85, 796 P.2d at 195.

¶35 Turning to the reasonableness factors, Respondents contend that the extent of their purposeful interjection in Montana was minimal, arguing that their "sole contact" was to assist Quality with a motor vehicle dealer bond. Again, Respondents ignore the allegations in Quality's complaint about their failure to procure workers' compensation insurance, but further, cite no authority to support their contention that the number of transactions is determinative of this issue. In *Spectrum Pool Prod., Inc. v. MW Golden, Inc.,* 1998 MT 283, ¶ 16, 291 Mont. 439, ¶ 16, 968 P.2d 728, ¶ 16, we noted that interjection into Montana, whether to the extent of a single transaction or a number of transactions, is not determinative. The District Court concluded this factor weighed in favor of exercising jurisdiction.

¶36    Respondents argue that, under factor two, defending the claim in Montana would burden them.  The District Court agreed with Respondents on this point, emphasizing that, with Nasca's dismissal from the action, no Montana parties remained in the action. However, we disagree.  First, the Respondents are located approximately 90 miles from Hamilton, a distance which is hardly excessive, given the problem of an out-of-state party. More importantly, Nasca's dismissal did not remove the last Montana party from the action. Quality was an ongoing business entity in Montana, hiring employees and engaging in commercial activity here.  As such, Quality is a "person" for purposes of determining jurisdictional questions under Rule 4A, M.R.Civ. P., even without having organized as a corporation:

> As used in this rule, the word "person," whether or not a citizen or resident of this state and *whether or not organized under the laws of this state*, includes . . . a corporation; a limited liability company; a business trust; an estate; a trust; *a partnership; an unincorporated association; and any two or more persons having a joint or common interest or any other legal or commercial entity*.

(Emphasis added.)   As a "person" under this Rule, Quality was entitled to consideration as a Montana resident for jurisdictional purposes.  This makes practical sense–Quality operated a dealership and hired employees in Montana.  It was thus entitled to consideration as a resident for accessing this state's courts.  Further, for these reasons, as well as the burdens Respondents' alleged actions have placed on a Montana claimant, a Montana business, and, indirectly, the citizens of this state, by its imposition upon the UEF, Montana has a significant interest in adjudicating this controversy under factor four and the importance of Montana to Quality's interest in convenient and effective relief, factor six, is also evident.

17

¶37    Regarding factor three, the extent of conflict with the sovereignty of the defendant's state, the District Court concluded that this factor favored the exercise of Montana jurisdiction because Montana insurance and workers' compensation law applied, not Idaho law. We agree. Nonetheless, the District Court concluded that Idaho had the superior interest in adjudicating the matter because the dispute was between Idaho residents. However, for the reasons set forth above, we conclude that Montana had, at a minimum, an equal interest in adjudicating the matter, given Quality's status.

¶38    After reviewing these factors, we conclude that they weigh in favor of exercising jurisdiction over the Respondents, and a compelling case that such exercise is unreasonable has not been demonstrated.

¶39    Respondents purposefully availed themselves to our jurisdiction, Quality's claims arose from Respondents' forum-related activity, and the exercise of jurisdiction over Respondents is reasonable and comports with due process. We therefore conclude that the District Court erred in declining to exercise jurisdiction over the Respondents in this matter.

¶40    Reversed and remanded for further proceedings consistent herewith.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ JAMES C. NELSON
/S/ JOHN WARNER