DA 13-0818

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 253

BRIAN TACKETT,

       Plaintiff and Appellant,

    v.

HOLLY ANN DUNCAN, STEPHEN STANLEY,
ROBERT HEMANN, in his individual capacity as
an employee of Citizens Property Insurance
Corporation, and CHARLES TUTWILER AND
ASSOCIATES, INC.,

       Defendants and Appellees.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
                In and For the County of Lincoln, Cause No. DV-13-81
                Honorable James B. Wheelis, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

           Brian Tackett, self-represented, Troy, Montana

       For Appellees:

           Sean S. Frampton, Morrison & Frampton PLLP, Whitefish, Montana
           (*Attorneys for Charles Tutwiler and Associates, Inc.*)

           Sean Goicoechea, Jinnifer J. Mariman, Moore, Cockrell, Goicoechea &
           Axelberg, PC, Kalispell, Montana
           (*Attorneys for Robert Hemann*)

           Stephen Stanley, self-represented, Tampa, Florida

                        Submitted on Briefs:  July 16, 2014
                              Decided:  September 23, 2014

Filed:

                              Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Brian Tackett (Brian) appeals from the order of the Nineteenth Judicial District Court, Lincoln County, granting summary judgment to Defendants Holly Ann Duncan, Stephen Stanley, Robert Hemann, and Charles Tutwiler and Associates, Inc. We affirm.

¶2 The issue on appeal is whether the District Court correctly determined that it lacked personal jurisdiction over Defendants.

## BACKGROUND

¶3 The following facts are taken from Brian's complaint, Defendants' motions to dismiss, and the documents filed in connection with Defendants' motions.

¶4 Defendant Holly Ann Duncan is a resident of Florida. In 2009, she signed a quit claim deed transferring to Brian's father, Grayson Tackett, her interest in real property located in Dade City, Florida. It appears that Grayson resides in Kentucky.

¶5 The Dade City property was insured by Citizens Property Insurance Corporation (Citizens). Citizens is "a government entity that is an integral part of the state [of Florida]." Fla. Stat. Ann. § 627.351(6)(a)1. Citizens "provide[s] affordable property insurance to applicants who are in good faith entitled to procure insurance through the voluntary market but are unable to do so." Fla. Stat. Ann. § 627.351(6)(a)1. Citizens issues insurance only on property located in Florida and only through agents licensed in Florida. Citizens does not transact any business in Montana.

¶6 A house was located on the Dade City property. In 2010, two bolts of lightning struck the house, resulting in a fire loss. Grayson filed a claim with Citizens and hired Defendant Charles Tutwiler and Associates, Inc. (Tutwiler), a public adjusting company,

2

to assist with handling the claim. Tutwiler is a Florida corporation. Defendant Robert Hemann was the Citizens adjustor on Grayson's claim. Hemann is a Florida resident. He has never resided, owned property, or transacted business in Montana.

¶7 On February 20, 2013, Citizens issued a check for $67,930.22 in settlement of the claim. The check was made out to Grayson and Duncan, the named beneficiaries under the policy, and to Tutwiler, their public adjuster. It was issued in Florida and was sent to Tutwiler in Florida. Tutwiler obtained Duncan's endorsement on the check, apparently based on Duncan's understanding that she would receive 50 percent of the proceeds once Grayson endorsed the check.

¶8 Brian claims that Duncan did not have any right to the insurance funds. He alleges that he reached an agreement with Tutwiler on Grayson's behalf, pursuant to which Brian would pay Tutwiler's adjusting fees and Tutwiler, in turn, would mail the Citizens check (with Tutwiler's and Duncan's endorsements) to Grayson "as a free and clear negotiable instrument needing only his signature." Brian states that he wired $7,543.02 from his bank account in Montana as payment of Tutwiler's adjusting fees on March 15, 2013. Tutwiler then sent the endorsed check to Grayson on March 18. It appears that Grayson attempted to cash or deposit the check in Kentucky, without success. Grayson then assigned the check to Brian.

¶9 On March 28, 2013, Duncan's attorney (Defendant Stephen Stanley) sent a letter to Hemann at Citizens. Stanley implied that Tutwiler had wrongfully accepted payment of its adjusting fees in exchange for sending the endorsed check to Grayson. Stanley asserted that Duncan's endorsement on the check had been obtained by fraud and false

3

pretenses. Stanley requested that Citizens cancel or stop payment on the check until the matter could be resolved.

¶10 Citizens ordered a stop payment on the check on April 3, 2013. In his complaint, Brian alleges that Tutwiler and Hemann effected the stop payment. Hemann denies this allegation and asserts that the stop payment was ordered by another Citizens employee. Tutwiler likewise disputes Brian's allegation, but also points out that even if Hemann and Tutwiler did in fact effect the stop payment as Brian claims, this act occurred in Florida.

¶11 On April 5, 2013, Hemann received an email from Brian. Brian stated that he represented himself and Grayson with regard to the Citizens check. Brian further stated that he had personally wired the funds to have the check released to Grayson. He asked that a new check be issued in Grayson's name only, for the full amount of $67,930.22, and that the new check be sent to Brian at a mailing address in Troy, Montana.

¶12 Also on April 5, 2013, Grayson contacted Citizens customer service and left a message requesting that Hemann contact him or Brian. Hemann returned the call but was unable to reach Grayson or Brian. Later that day, Hemann received a call from Brian. The two of them discussed the letter Stanley had sent to Hemann on Duncan's behalf. Hemann advised Brian that Citizens intended to reissue the check and that Citizens was contractually obligated to issue the check to the co-insureds, Duncan and Grayson, and to their public adjuster, Tutwiler. Hemann indicated that the reissued check would be sent to Tutwiler in Florida. Brian objected to this arrangement.

¶13 Brian filed the instant action in Montana's Nineteenth Judicial District Court on April 8, 2013. He alleged that Defendants had procured a wire transfer from Brian to

4

Tutwiler under false pretenses and with the intent to defraud him. More specifically, he claimed that Duncan, Stanley, Hemann, and Tutwiler had conspired to induce payment from Brian for Tutwiler's adjusting fees of $7,543.02 and then stopped payment on the Citizens check for the $67,930.22 in insurance proceeds. Brian sought compensatory damages of $7,568.02 (which includes a $25.00 wire-transfer fee) and punitive damages. He asserted that the District Court had personal jurisdiction over Defendants because his injury arose from "a transaction which occurred in Lincoln County, Montana."

¶14 Defendants all moved to dismiss for lack of personal jurisdiction. Initially, the District Court noted that, to survive a motion to dismiss for lack of personal jurisdiction, the plaintiff must make a sufficient showing that personal jurisdiction exists based not only on the pleadings, but also on the affidavits and exhibits supporting or opposing the motion. *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011); *Jet Charter Serv., Inc. v. Koeck*, 907 F.2d 1110, 1112 (11th Cir. 1990). Thus, the court converted Defendants' motions to dismiss into motions for summary judgment and set a time for discovery and supplemental briefing.

¶15 After the deadline for discovery had passed, the District Court entered an order granting summary judgment to Defendants. The court concluded that general personal jurisdiction did not exist because Defendants' contacts with Montana were neither continuous nor systematic. The court further concluded that specific personal jurisdiction did not exist because all of the substantial activity underlying Brian's claims occurred in Florida. The court noted that Defendants were not engaged in a business relationship with Brian, who was neither an owner of the Dade City property nor a beneficiary under

5

the insurance policy. The court reasoned that Defendants' contacts with Montana were minimal and would not have caused them to anticipate being haled into a Montana court.

## STANDARD OF REVIEW

¶16 The existence of personal jurisdiction is a question of law, which we review de novo. *See Gulf Ins. Co. v. Clark*, 2003 MT 87, ¶ 11, 315 Mont. 121, 68 P.3d 673; *El Dorado Heights Homeowners' Assn. v. Dewitt*, 2008 MT 199, ¶ 14, 344 Mont. 77, 186 P.3d 1249. If the trial court conducts a preliminary hearing and makes factual findings necessary to the determination of personal jurisdiction, we review those findings of fact to determine whether they are clearly erroneous. *Gulf Ins. Co.*, ¶ 11. No such hearing was conducted in the present case, however. The District Court based its determination of personal jurisdiction on the parties' filings supporting and opposing the motions for summary judgment. As such, our review of the District Court's decision is entirely de novo. *Andersen v. Schenk*, 2009 MT 399, ¶ 2, 353 Mont. 424, 220 P.3d 675.

## DISCUSSION

¶17 *Whether the District Court correctly determined that it lacked personal jurisdiction over Defendants.*

¶18 "[T]he reasonableness of asserting jurisdiction over a nonresident defendant must be assessed in the context of our federal system of government." *Simmons v. State*, 206 Mont. 264, 271, 670 P.2d 1372, 1376 (1983) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S. Ct. 559 (1980)). The Due Process Clause of the Fourteenth Amendment constrains a state's authority to bind a nonresident defendant to a judgment of its courts. *Walden v. Fiore*, ___ U.S. ___, 134 S. Ct. 1115, 1121 (2014)

(citing *World-Wide Volkswagen*, 444 U.S. at 291, 100 S. Ct. at 564). "Although a nonresident's physical presence within the territorial jurisdiction of the court is not required, the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" *Walden*, 134 S. Ct. at 1121 (ellipsis in original) (quoting *Intl. Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945), in turn quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 343 (1940)).

¶19    There are two categories of personal jurisdiction: specific and general. *Daimler AG v. Bauman*, ___ U.S. ___, 134 S. Ct. 746, 754 (2014). "Specific" or "case-linked" jurisdiction depends on an affiliation between the forum and the underlying controversy, principally an activity or occurrence that takes place in the forum state and is therefore subject to the state's regulation. *Walden*, 134 S. Ct. at 1121 n.6; *Goodyear Dunlop Tires Operations, S.A. v. Brown*, ___ U.S. ___, 131 S. Ct. 2846, 2851 (2011). Thus, specific jurisdiction focuses on the "'relationship among the defendant, the forum, and the litigation,'" *Daimler*, 134 S. Ct. at 758 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S. Ct. 2569, 2580 (1977)), and depends on whether the defendant's "suit-related conduct" created a substantial connection with the forum state, *Walden*, 134 S. Ct. at 1121. "General" or "all purpose" jurisdiction, conversely, permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit. *Walden*, 134 S. Ct. at 1121 n.6. General jurisdiction exists where the defendant's affiliations with the state are so "continuous and systematic" as to render the defendant essentially at home in the forum state and, as such, subject to suit on any and all claims against it, even

causes of action that arise from dealings entirely distinct from the defendant's activities within the state. *Daimler*, 134 S. Ct. at 754.

¶20 Rule 4(b)(1) of the Montana Rules of Civil Procedure incorporates these principles of general and specific jurisdiction. *Simmons Oil Corp. v. Holly Corp.*, 244 Mont. 75, 83, 796 P.2d 189, 194 (1990). The first sentence of the rule provides for general jurisdiction. It states: "All persons found within the state of Montana are subject to the jurisdiction of Montana courts." M. R. Civ. P. 4(b)(1). We have defined "found within" Montana to mean that the party is physically present in the state or that the party's contacts with the state are so pervasive that the party may be deemed to be physically present within the state. *Simmons Oil*, 244 Mont. at 83, 796 P.2d at 194. "A nonresident defendant that maintains 'substantial' or 'continuous and systematic' contacts with the forum state is found within the state and may be subject to that state's jurisdiction even if the cause of action is unrelated to the defendant's activities within the forum." *Simmons Oil*, 244 Mont. at 83, 796 P.2d at 194.

¶21 The remainder of Rule 4(b)(1) provides for specific jurisdiction. *Threlkeld v. Colo.*, 2000 MT 369, ¶ 10, 303 Mont. 432, 16 P.3d 359. It states:

> Additionally, any person is subject to the jurisdiction of Montana courts as to any claim for relief arising from the doing personally, or through an employee or agent, of any of the following acts:
> (A) the transaction of any business within Montana;
> (B) the commission of any act resulting in accrual within Montana of a tort action;
> (C) the ownership, use, or possession of any property, or of any interest therein, situated within Montana;
> (D) contracting to insure any person, property, or risk located within Montana at the time of contracting;

8

(E) entering into a contract for services to be rendered or for materials to be furnished in Montana by such person;

(F) acting as director, manager, trustee, or other officer of a corporation organized under the laws of, or having its principal place of business within, Montana; or

(G) acting as personal representative of any estate within Montana.

M. R. Civ. P. 4(b)(1)(A)-(G).

¶22 This Court applies a two-part test to determine whether a Montana court may exercise personal jurisdiction over a nonresident defendant. *Threlkeld*, ¶ 9. First, we determine whether personal jurisdiction—general or specific—exists pursuant to Rule 4(b)(1). Second, if personal jurisdiction exists pursuant to Rule 4(b)(1), we then determine whether exercising such jurisdiction would comport with traditional notions of fair play and substantial justice embodied in the Due Process Clause. *Threlkeld*, ¶ 9; *Nasca v. Hull*, 2004 MT 306, ¶ 26, 323 Mont. 484, 100 P.3d 997.

¶23 The District Court determined that the first part of the test was not met. The court considered both general jurisdiction and specific jurisdiction and concluded that neither existed under Rule 4(b)(1). Brian does not contest the District Court's conclusion as to general jurisdiction. Thus, we turn to the question whether the District Court erred in concluding that it lacked specific jurisdiction over Defendants.

¶24 Brian relies on Rule 4(b)(1)(B) as the sole basis of specific jurisdiction in this case. That provision states: "[A]ny person is subject to the jurisdiction of Montana courts as to any claim for relief arising from . . . the commission of any act resulting in accrual within Montana of a tort action." M. R. Civ. P. 4(b)(1)(B). Brian suggests that his tort claims accrued in Montana because Defendants' conduct caused him to suffer a loss in

9

Montana—namely, the funds he transferred from his Montana bank account to Tutwiler. In response, Defendants cite this Court's "accrual" precedents for the proposition that Brian's claims did not accrue within Montana. We agree with Defendants.

¶25 In *Bi-Lo Foods, Inc. v. Alpine Bank*, 1998 MT 40, 287 Mont. 367, 955 P.2d 154, Bi-Lo Foods (a Montana corporation) entered into negotiations with D. Hermann & Co. (a Colorado sole proprietorship) for the purchase of refrigeration equipment. As part of these negotiations, Hermann instructed Bi-Lo to deposit earnest money into an escrow account at Alpine Bank (a Colorado corporation). Bi-Lo sent Alpine a $10,000 check, which Alpine deposited into Hermann's account. Thereafter, negotiations between Bi-Lo and Hermann broke down. Bi-Lo demanded that the escrow money be returned, but Alpine and Hermann refused. Bi-Lo then filed a complaint against Alpine in a Montana district court. *Bi-Lo*, ¶¶ 5-7. Bi-Lo argued that its claims accrued in Montana because, "by cashing its check and disbursing the funds to Hermann, Alpine took voluntary actions which were calculated to have an effect in Montana, did cause injury in Montana to a Montana resident, and should have caused Alpine to reasonably anticipate being haled into court in Montana." *Bi-Lo*, ¶ 21. We disagreed, reasoning that all acts giving rise to Bi-Lo's claims occurred in Colorado: "Bi-Lo sent its check to Alpine in Colorado. Alpine deposited the check into the account of one of its customers in Colorado. Alpine's alleged mishandling of the check occurred in Colorado. Accordingly, Alpine's activities did not result in the accrual of a tort action in Montana." *Bi-Lo*, ¶¶ 27, 31.

¶26 In *Bird v. Hiller*, 270 Mont. 467, 892 P.2d 931 (1995), Carolyn Bird and Cara Bird were Montana residents who were involved in an automobile accident in Idaho. Philip

Bird (Carolyn's husband and Cara's father) hired M.B. "Buck" Hiller, an Idaho attorney, to represent them in connection with the accident. Hiller sent Philip a contingency fee agreement, which Philip signed in Montana and returned to Hiller. Cara did not sign the agreement, however, nor was her name mentioned in the agreement. Hiller undertook the representation and ultimately negotiated settlements of the Birds' claims. Two settlement checks were issued, one for Cara and one for Carolyn. Both checks included Hiller as a payee. Meanwhile, a dispute arose between the Birds and Hiller over Hiller's attorney's fees. Hiller claimed he was entitled to one-third of each settlement check, while the Birds claimed he was entitled to one-third of only Carolyn's check, since Cara had not signed the fee agreement. The Birds, through their Montana counsel, sent the checks to Hiller for his signature; however, Hiller refused to endorse them until he received written authorization to negotiate the drafts, deduct his attorney's fees and costs, and remit the balance to the Birds. *Bird*, 270 Mont. at 468-70, 892 P.2d at 931-32.

¶27     The Birds filed a complaint against Hiller in a Montana district court asserting claims of fraud, deceit, and conversion. They argued that these claims accrued in Montana because that is where Hiller sent certain documents to the Birds. First, Hiller sent the fee agreement to the Birds in Montana, where it was executed. The agreement allegedly was false and misleading, and evidenced an intent to defraud and deceive the Birds, because it did not mention Hiller's representation of Cara or that Hiller would take a fee for any services he provided to Cara. Second, Hiller later sent a letter to the Birds in Montana advising them that he was going to withhold the settlement checks until he received authorization to negotiate the checks and deduct attorney's fees and costs. *Bird*,

11

270 Mont. at 471-73, 892 P.2d at 933-34. We concluded, however, that Hiller's sending these documents to Montana did not result in the accrual of claims here. We held that the conversion claim accrued in Idaho because that is where Hiller came into possession of the checks and allegedly asserted unauthorized control over them. *Bird*, 270 Mont. at 472, 892 P.2d at 934. Likewise, any alleged fraud or deceit that Hiller perpetrated on the Birds as a result of his unstated intentions about representing Cara accrued in Idaho. In this regard, we observed that Philip traveled to Idaho to seek out Hiller's representation, and all representation regarding the Birds' claims, including the settlement negotiations, took place in Idaho. Although Hiller sent the fee agreement and other letters to the Birds in Montana, we noted that "jurisdiction is not acquired through interstate communications pursuant to a contract to be performed in another state." *Bird*, 270 Mont. at 473, 892 P.2d at 934.

¶28 In *Threlkeld*, the Threlkelds raised and bred Appaloosa horses outside Bozeman, Montana. After one of the horses developed a neurological condition, the Threlkelds took the horse to Colorado State University's Veterinary Teaching Hospital for treatment. The horse died the day after it was admitted to the Hospital, and the Threlkelds filed suit in a Montana district court against the University and the Hospital alleging veterinary malpractice, deceit, and negligent misrepresentation or fraud. *Threlkeld*, ¶¶ 3-5. The Threlkelds asserted that University personnel had recommended a course of treatment and assured them the Hospital could provide such treatment, but that these assurances were false because University personnel knew the facilities were not available due to a recent salmonella outbreak and the horse did not receive the quality of care promised.

12

*Threlkeld*, ¶ 26. In arguing that their claims accrued in Montana, the Threlkelds cited *Johnson Flying Serv., Inc. v. Mackey Intl., Inc.*, 1975 U.S. Dist. LEXIS 16642 (D. Mont. Aug. 8, 1975). The *Johnson* court, after noting the absence of Montana decisional authority, relied on federal cases to conclude that a nonresident who sends material representations into a state with the intention that they be relied on, and they are relied on by a resident of the forum state to his detriment, is subject to the jurisdiction of that state's courts. 1975 U.S. Dist. LEXIS 16642, at *8-9. We concluded, however, that this construction of Montana's "accrual" provision was doubtful in light of our more recent decision in *Bird*. *Threlkeld*, ¶¶ 29-30. Based on *Bird*, we held that "the Threlkelds' deceit and fraud claims relate entirely to services to be performed in Colorado and the mere existence of interstate communications relating to those services does not provide a basis for personal jurisdiction over [the Colorado defendants]." *Threlkeld*, ¶ 30.

¶29 Lastly, in *Cimmaron Corp. v. Smith*, 2003 MT 73, 315 Mont. 1, 67 P.3d 258, Cimmaron (a Montana corporation) entered into a collection agreement with Budget Reader's Service (a Pennsylvania corporation owned by Pennsylvania resident Gregory Smith) and a sales agreement with Gregory's father, Harold Smith (a Florida resident). Thereafter, Cimmaron filed suit against Budget and the Smiths in a Montana district court asserting various claims, including conversion of funds and misappropriation of assets. *Cimmaron*, ¶¶ 4, 6, 17. Cimmaron conceded that the defendants' actions giving rise to those claims occurred outside Montana; however, Cimmaron argued that because it was detrimentally affected within Montana by the defendants' actions, such actions resulted in the accrual of a tort action within Montana. *Cimmaron*, ¶ 17.

13

¶30 We disagreed with this argument. We reiterated that "'a non-resident does not subject himself to the jurisdiction of Montana by merely entering into a contract with a resident of Montana.'" *Cimmaron*, ¶ 14 (alteration omitted) (quoting *Edsall Constr. Co. v. Robinson*, 246 Mont. 378, 382, 804 P.2d 1039, 1042 (1991)). Moreover, "'interstate communication is an almost inevitable accompaniment to doing business in the modern world, and cannot by itself be considered a "contact" for justifying the exercise of personal jurisdiction.'" *Cimmaron*, ¶ 14 (quoting *Edsall*, 246 Mont. at 382, 804 P.2d at 1042, in turn quoting *Simmons*, 206 Mont. at 280, 670 P.2d at 1380). Finally, we again noted that "personal jurisdiction is not acquired through interstate communications made pursuant to a contract that *is to be performed in another state*." *Cimmaron*, ¶ 14 (emphasis in original) (citing *Bird*, 270 Mont. at 473, 892 P.2d at 934). Relying on *Bird*, we held that the actions which gave rise to the alleged torts occurred outside Montana, since the defendants came into possession of, and allegedly misappropriated, Cimmaron's accounts receivable in Pennsylvania. We thus held that the defendants' actions did not result in the accrual of a tort action within Montana. *Cimmaron*, ¶ 20.

¶31 In analyzing accrual in each of these cases, we focused on where the events giving rise to the tort claims occurred, rather than where the plaintiffs allegedly experienced or learned of their injuries. In *Bi-Lo*, Alpine's alleged mishandling of Bi-Lo's check took place in Colorado. In *Bird*, Hiller's alleged fraud, deceit, and conversion arose from actions that Hiller took in Idaho. In *Threlkeld*, the defendants' alleged malpractice and misrepresentations regarding the horse's treatment occurred in Colorado. In *Cimmaron*, the defendants' conversion and misappropriation of funds occurred in Pennsylvania.

14

¶32    In addition to the foregoing cases, the Supreme Court's recent pronouncements on specific jurisdiction, within the context of a tort action, are also relevant to our analysis. First, the limits on a state's adjudicative authority "principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Walden*, 134 S. Ct. at 1122 (citing *World-Wide Volkswagen*, 444 U.S. at 291-92, 100 S. Ct. at 564). Thus, the relationship among the defendant, the forum, and the litigation "must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 134 S. Ct. at 1122 (emphasis in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2184 (1985)). "[T]he defendant-focused 'minimum contacts' inquiry [cannot be satisfied] by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Walden*, 134 S. Ct. at 1122; *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417, 104 S. Ct. 1868, 1873 (1984) ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."). However significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive in determining whether the exercise of jurisdiction over the defendant is proper. *Walden*, 134 S. Ct. at 1122.

¶33    Second, "[the] 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 134 S. Ct. at 1122. "[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."

*Walden*, 134 S. Ct. at 1122. While "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties[,] . . . a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Walden*, 134 S. Ct. at 1123. A defendant must be haled into court in a forum state "based on his own affiliation with" the state, not based on the unilateral activity of a plaintiff or on the random, fortuitous, or attenuated contacts the defendant has with other persons affiliated with the state. *Walden*, 134 S. Ct. at 1123.

¶34    Here, Defendants' only link to Montana is Brian. Defendants have no connection with this state, other than the connection that Brian himself has created. No part of Defendants' course of conduct forming the basis of Brian's claims occurred in Montana. Defendants never traveled to, conducted activities within, or sent anything or anyone to Montana. Citizens issued the settlement check in Florida and sent the check to Tutwiler in Florida. Tutwiler, in turn, sent the check to Grayson in Kentucky. Duncan, Stanley, Hemann, and Tutwiler formulated and executed the alleged conspiracy to defraud Brian in Florida. Tutwiler's alleged agreement to send Grayson the check with Duncan's and Tutwiler's endorsements in exchange for Brian's payment of Tutwiler's adjusting fees occurred in Florida, and Defendants' alleged act of stopping payment on the settlement check after receiving Brian's payment occurred in Florida. Duncan's, Tutwiler's, and Hemann's communications with Brian were initiated by Brian on his and Grayson's behalf and were directed, by Brian, to these individuals in Florida.

¶35    Brian contends that his alleged injury (the loss of the funds he paid to Tutwiler) occurred in Montana. "[M]ere injury to a forum resident is not a sufficient connection to

the forum," however. *Walden*, 134 S. Ct. at 1125; *accord Cimmaron*, ¶¶ 17-20 (the mere fact that the plaintiff was detrimentally affected within Montana by the defendant's actions outside Montana is not sufficient to establish accrual of a tort action within this state). Brian also contends that Defendants knew their conduct would cause him a loss in Montana. However, the transmission into Montana of material statements that the defendant allegedly knows are false or fraudulent is insufficient by itself to establish accrual of a fraud or deceit action in Montana. *Bird*, 270 Mont. at 472-73, 892 P.2d at 934; *Threlkeld*, ¶¶ 26-30; *cf. Bi-Lo*, ¶¶ 21-31 (that the defendant allegedly took actions which were calculated to have an effect in Montana and caused an injury to a Montana resident in Montana does not establish accrual of an action in Montana).

¶36 In sum, Defendants "formed no jurisdictionally relevant contacts" with Montana. *Walden*, 134 S. Ct. at 1124. All but one of the events giving rise to Brian's claims occurred in Florida. Brian's single act of authorizing his local bank in Montana to wire funds to Tutwiler is insufficient to establish that his tort action accrued in Montana for purposes of M. R. Civ. P. 4(b)(1)(B). Therefore, the District Court correctly concluded that it lacked personal jurisdiction over Defendants.

¶37 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ JIM RICE