JUSTICE McKINNON,
dissenting.
¶30 The Court states that Buckles’ Complaint was dismissed by the District Court “without any substantive analysis,” Opinion, ¶ 24, and in a “single paragraph setting forth the procedural history of the case ... concluded that the motion was being granted ‘[flor the reasons argued by Continental.’ ” Opinion, ¶ 8. The Court does not consider the District Court’s Response to a writ of supervisory control filed by Buckles in which the singular issue raised was the court’s alleged error in granting Continental’s motion to dismiss for lack of personal jurisdiction. We ordered the District Court to respond; the court did—in a seventeen-page Response that set forth its reasons for concluding there was neither general personal jurisdiction nor specific personal jurisdiction over Continental. Following our review of the District Court’s Response, we concluded that certification pursuant to M. R. Civ. P. 54(b) would give this Court the ability to conduct an interlocutory review pursuant to M. R. App. P. 6(6). We dismissed Buckles’ petition on October 18, 2016, and, as a result, the District Court granted Buckles’ request for certification on October 26, 2016. Buckles did not request a hearing in the District Court to develop jurisdictional facts following our dismissal of the petition; Buckles simply asked that the issue of personal jurisdiction be certified to this Court for resolution as an interlocutory appeal. The District Court’s rationale, as articulated in its Response to the petition for writ of supervisory control, should be considered in the instant appeal. The rationale supporting the District Court’s decision to grant *529 Continental’s Motion to Dismiss for lack of personal jurisdiction, as set forth in its Response to Buckles’ petition for a writ, is the matter being reviewed on appeal. The Response was thorough, deliberate, and addressed both general and specific personal jurisdiction. Although the court’s Response addresses a matter squarely on appeal, and could have been made part of the record simply by placing it in the court file, I would, to the extent necessary, take judicial notice of the District Court’s Response pursuant to In re Marriage of Carter-Scanlon, 2014 MT 97, ¶ 17, 374 Mont. 434, 322 P.3d 1033.
¶31 Significantly, after Continental filed its motion to dismiss, Buckles received a 90-day extension to conduct jurisdictional discovery. The only “suit-related” documents relevant to specific jurisdiction that were produced were (1) a spreadsheet filled out by a different defendant, and (2) the Master Service Contract between Continental and BH Flowtest, the entity employing Buckles. The Master Service Contract expressly stated that BH Flowtest was neither an employee nor agent of Continental. Lastly, Continental’s Area Production Manager, Russell J. Atkins (“Atkins”), also submitted an affidavit representing that Continental does not direct or control the tank gauging contractors; rather, “it is the contractors who direct the tank gauging operations of their respective employees, including the recording of well- and date-specific data on the form spreadsheet.” Atkins testified that the employees and operators of the contractors are the ones measuring and recording the data on the spreadsheet. Buckles has failed to produce any evidence controverting Atkins’ description of the subcontractor relationships regarding oil production at the Columbus Federal 2-16H where the injury occurred.
¶32 The District Court understood these relationships and stated:
Continental operates the Columbus Federal 2-16H well site, located near Alexander, North Dakota (“Continental’s North Dakota well site”). Continental contracted with BH FlowTest, Inc., a Montana corporation with its principal place of business in Sidney, Montana, which contracted with Black Rock Testing, Inc. (“Black Rock”), a Montana corporation with its principal place of business in Glasgow, Montana, which contracted with Janson Palmer, d/b/a Black Gold Testing, Inc. (“Black Gold”), a Montana business entity with its principal place of business in Glasgow, Montana, to perform manual test gauging and production monitoring on Continental’s North Dakota Well site. Black Gold employed Zachery Scott Buckles (“Buckles”), a Glasgow, Montana, resident or subcontracted with Buckles d/b/a Dozer Well Testing.
(Footnotes omitted). The District Court also understood the injury *530 occurred in North Dakota and explained that “[o]n April 17, 2014, Black Gold dispatched Buckles from his Glasgow, Montana, residence to gauge crude oil production tanks on Continental’s North Dakota well site” where Buckles ultimately died. The District Court observed that Continental is an Oklahoma corporation with its principal place of business in Oklahoma City, Oklahoma, and corporate offices in Sidney, Montana.
¶33 After concluding that pursuant to Daimler there was no general jurisdiction over Continental, the District Court analyzed whether there was specific jurisdiction over Continental pursuant to each of the subsections of M. R. Civ. P. 4(b)(1)(A)-(C). The court considered relevant jurisprudence: including Columbia Falls Aluminum Co. v. Hindin/Owen/Engelke, Inc., 224 Mont. 202, 728 P.2d 1342 (1986); Simmons Oil Corp. v. Holly Corp., 244 Mont. 75, 796 P.2d 189 (1990); Tackett v. Duncan, 2014 MT 253, 376 Mont. 348, 334 P.3d 920; Cimmaron Corp. v. Smith, 2003 MT 73, 315 Mont. 1, 67 P.3d 258; and Larson v. Ford Motor Co., No. DV-15-245B (Mont. 18th Jud. Dist. Ct. 2016). The court held that “[t]he claim for relief in this case involves Continental’s agreements with BH FlowTest, a Montana entity, to perform work in North Dakota and an accident on Continental’s North Dakota well site.” Pursuant to M. R. Civ. P. 4(b)(1)(A)—whether the claims arise from “the transaction of any business within Montana,”—the court concluded that the “Continental-BH FlowTest Montana connection is not enough to confer specific jurisdiction without offending due process constraints under Cimmaron.”
¶34 Next, the District Court considered M. R. Civ. P. 4(b)(1)(B) —whether the claims arise from “the commission of any act resulting in accrual within Montana of a tort action ....” The District Court observed that although Buckles alleged in the Complaint that Continental’s Sidney field office directed Buckles’ activities, Buckles acknowledges that “Continental’s connection to Buckles involved contracts from Continental to BH FlowTest to Black Rock to Black Gold to Buckles” and that the record establishes that the injury causing events did not occur in Montana. Citing Tackett and Cimmaron, the District Court concluded that the series of contracts employing subcontractors does not support specific jurisdiction over Continental.
¶35 Finally, the District Court considered M. R. Civ. P. 4(b)(1)(c) —whether the claims arise from “the ownership, use, or possession of any property, or of any interest therein, situated within Montana.” The District Court explained that the claims arise from an accident that occurred in North Dakota and the fact that Continental owns wells in *531 Montana does not “confer[] specific jurisdiction for a claim arising out of an accident occurring on a North Dakota well site.”
¶36 The Court distorts our decision in Minuteman Aviation, which held that “Iwlhere material jurisdictional facts are disputed, the appropriate procedure is a preliminary hearing by the District Court pursuant to Rule 12(d), M.R.Civ.P.” 237 Mont. at 212, 772 P.2d at 308 (citing Data Disc, 557 F.2d at 1285) (emphasis added). Here, there were no disputed facts, but rather an absence of any facts establishing suit-related conduct on the part of Continental, other than a train of contracts with subcontractors and an injury occurring in North Dakota. The District Court understood the requirements for exercising specific jurisdiction based on alleged suit-related conduct by Continental and correctly ruled that specific jurisdiction was lacking.
¶37 M. R. Civ. P. 4(b)(1) requires that Buckles’ claim for relief must arise out of an act done “personally, or through an employee or agent” of Continental. The Master Services Agreement establishes that BH Flowtest was neither an employee nor agent of Continental. Accordingly, for Continental to be subject to specific jurisdiction of a Montana court, Buckles’ claim must have arisen out of an act done “personally” by Continental, either through its transaction of business in Montana, M. R. Civ. P. 4(b)(1)(A); through the tort action having accrued in Montana, M. R. Civ. P. 4(b)(1)(B); or as a result of the claim arising out of Continental’s ownership of Montana property, M. R. Civ. P. 4(b)(1)(C). The United States Supreme Court has “consistently rejected attempts to satisfy the defendant-focused ‘minimum contacts’ inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.” Walden, _ U.S. at _, 134 S. Ct. at 1122. The “unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.” Helicopteros Nacionales de Columbia, S. A. v. Hall, 466 U.S. 408, 417, 104 S. Ct. 1868, 1873 (1984). Thus, however significant the contacts to Montana of Buckles or other third party subcontractors may be, those contacts cannot be decisive in determining whether the exercise of jurisdiction over the defendant is proper. Walden, _ U.S. at _, 134 S. Ct. at 1122.
¶38 Importantly, Buckles does not request an opportunity to conduct further discovery or have a hearing; rather, Buckles argues that the law applied to the undisputed facts establishes specific personal jurisdiction over Continental and that the court erred in finding otherwise. We stated in Minuteman Aviation that “where material jurisdictional facts are disputed, the appropriate procedure is a *532 preliminary hearing.” 237 Mont. at 212, 772 P.2d at 309. Further, the court, as the District Court did here, “has discretion to permit discovery to resolve factual issues" Minuteman Aviation, 237 Mont. at 212, 772 P.2d at 309 (citing Data Disc, 557 F.2d at 1285). Regardless of how the jurisdictional facts are produced, the plaintiff must “establish the jurisdictional facts by a preponderance of the evidence.” Minuteman Aviation, 237 Mont. at 212, 772 P.2d at 309 (citing Data Disc, 557 F.2d at 1285). The Court suggests that the instant facts are so intertwined with the merits of the underlying controversy that a decision on the jurisdictional issue may have to wait until a decision can be made on the merits. Opinion, ¶ 28, n.2. However, Minuteman Aviation did not authorize an approach that requires a defendant to defend a proceeding in a foreign state and wait until a decision is made on the merits before its motion to dismiss for lack of jurisdiction is granted. Further, in my opinion, it is inappropriate for this Court to set forth a new rule such as this in a footnote, as it has done.
¶39 Minuteman Aviation held that “[i]n a situation where the jurisdictional facts are intertwined with facts involving the merits of the case, the district court may determine its jurisdiction in a plenary pretrial proceeding.” 237 Mont. at 212, 772 P.2d at 309 (citation omitted) (emphasis added). Here, Buckles has failed to make even a prima facie showing of jurisdictional facts which, based upon a preponderance of the evidence, is sufficient to confer jurisdiction over Continental. This is so even after an extension of discovery in order to do so. The Court’s conclusion ipso facto that facts are in dispute does not make it so. The uncontroverted evidence of the Master Service Agreement and Atkins’ affidavit establish that the subcontractors directed the tank gauging operations of their respective employees. The instant facts are easily distinguishable from those present in Minuteman Aviation, which involved the repair of an aircraft engine in one state; installation of the engine in another state; and the accident occurring in Montana. 237 Mont. at 208, 772 P.2d at 306. The instant facts are also easily distinguished from Data Disc, which involved an alleged breach of contract and questions of where the contracts were negotiated and executed. 557 F.2d at 1283-84.
¶40 Accordingly, even without consideration of the District Court’s Response, Buckles has not met her burden of proof to demonstrate Continental’s suit-related conduct arose from its transaction of business in Montana. To the extent we are unhappy with the absence of any underlying jurisdictional facts and seek to facilitate a second fishing expedition to develop those facts, I dissent.