No. 98-101

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 283

SPECTRUM POOL PRODUCTS, INC.,

Plaintiff and Appellant,

v.

MW GOLDEN, INC.,

Defendant, Respondent, and Cross-Appellant..

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable Douglas Harkin, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Robert C. Lukes, Garlington, Lohn & Robinson, Missoula, Montana

For Respondent:

Tammy Wyatt-Shaw, Robert J. Phillips, Phillips & Bohyer, Missoula, Montana

Submitted on Briefs: June 25, 1998

Decided: November 19, 1998

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶1. Spectrum Pool Products, Inc., appeals from an order of the Fourth Judicial District, Missoula County, dismissing this action on grounds that the court did not have personal jurisdiction over defendant MW Golden, Inc. We reverse.

¶2. The issue is whether under the facts of this case a Montana court may exercise personal jurisdiction over MW Golden, Inc., a Colorado corporation.

¶3. Spectrum Pool Products, Inc., (Spectrum) is a Montana corporation which manufactures and distributes aquatic and pool products. In August of 1996, MW Golden, Inc., (MW Golden) contacted Spectrum at its Missoula, Montana office and subsequently contracted to purchase from Spectrum a mechanical device known as a Swimlift, which assists in raising or lowering disabled individuals into a swimming pool. The Swimlift was to be installed at the swimming pool facility at the Arapaho Community College in Colorado, which MW Golden had contracted to modify.

¶4. The parties, working with the project architect, negotiated by telephone and in writing concerning price, delivery, servicing, and specific design elements to be included in the Swimlift. They agreed that Spectrum would finalize the design and manufacture the Swimlift at its facility in Missoula and that payment by MW Golden was due at Spectrum's Missoula office. Spectrum was then to ship the Swimlift to MW Golden in Colorado, where MW Golden was to install it at the Arapaho Community College.

¶5. Spectrum shipped the Swimlift directly to Arapaho Community College in December 1996, and MW Golden paid $8,348.35 of the $10,368.22 purchase price. In January or early February of 1997, MW Golden shipped the Swimlift back to Montana, where Spectrum repaired damages to it. After these services were completed, Spectrum shipped the Swimlift back to Colorado.

¶6. Spectrum filed this action in April 1997 to recover the amount remaining due under the contract, the costs of repairing the Swimlift, and the shipping charges for the repairs completed in Montana. In its answer to the complaint, MW Golden moved to dismiss, alleging, among other things, that the State of Montana lacked personal jurisdiction over it. The District Court agreed and dismissed the case. Spectrum appeals, and MW

Golden cross-appeals the court's finding that it transacted business in the State of Montana.

## DISCUSSION

?7. Under the facts of this case, may a Montana court exercise personal jurisdiction over MW Golden, Inc., a Colorado corporation?

?8. The range of Montana's long-arm jurisdiction is codified at Rule 4B(1), M.R.Civ.P.:

(1) Subject to jurisdiction. All persons found within the state of Montana are subject to the jurisdiction of the courts of this state. In addition, any person is subject to the jurisdiction of the courts of this state as to any claim for relief arising from the doing personally, through an employee, or through an agent, of any of the following acts:

(a) the transaction of any business within this state;

(b) the commission of any act which results in accrual within this state of a tort action;

(c) the ownership, use or possession of any property, or of any interest therein, situated within this state;

(d) contracting to insure any person, property or risk located within this state at the time of contracting;

(e) entering into a contract for services to be rendered or for materials to be furnished in this state by such person; or

(f) acting as director, manager, trustee, or other officer of any corporation organized under the laws of, or having its principal place of business within this state, or as personal representative of any estate within this state.

Spectrum does not allege that MW Golden is "found within? Montana under the first sentence of the rule; rather, it argues that specific acts, as provided for in the second portion of Rule 4B(1), subject MW Golden to jurisdiction in Montana.

**¶9. Jurisdiction may be established if a defendant maintains "minimum contacts" with the forum state via one or more of the acts enumerated in Rule 4B(1), M.R.Civ.P., and if the exercise of jurisdiction does not offend due process.** *Simmons v. State* **(1983), 206 Mont. 264, 272, 670 P.2d 1372, 1376. Both of these requirements must be satisfied.**

**¶10. MW Golden argues that its contacts with Montana were random, fortuitous, attenuated and due to the unilateral activity of the State of Colorado, which set the contract criteria for modifications to the Arapaho Community College swimming pool. However, as the District Court noted, the allegations of a plaintiff's complaint must be taken as true for purposes of deciding a motion to dismiss.** *Nelson v. San Joaquin Helicopters* **(1987), 228 Mont. 267, 271, 742 P.2d 447, 449. The allegations in Spectrum's complaint are sufficient to establish that MW Golden potentially had transacted business within Montana pursuant to Rule 4(B)(1)(a), M.R.Civ.P., and entered into a contract for services to be rendered within the State of Montana pursuant to Rule 4(B)(1)(e), M.R.Civ.P.**

**¶11. The allegations of the complaint establish that MW Golden contacted Spectrum in Montana. They contracted by telephone for the manufacture and sale of a product in Montana. Numerous telephone contacts and correspondence came from MW Golden to Spectrum in Montana. Later, at MW Golden's behest, Spectrum provided repair services to the Swimlift in Montana. Finally, MW Golden refused to make full payment for the Swimlift, payment which was due in Montana. We conclude that MW Golden engaged in a transaction within Montana by which it purposefully availed itself of the opportunity to conduct business within this state.**

**¶12. The second prong of the long-arm jurisdiction analysis requires us to determine whether the exercise of jurisdiction over MW Golden offends traditional due process notions of fair play and substantial justice. Montana has adopted the Ninth Circuit's three-part test for determining whether the exercise of jurisdiction comports with due process:**

(1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking its laws;

(2) the claim must be one which arises out of or results from the defendant's forum-related activities; and

No

(3) the exercise of jurisdiction must be reasonable.

*Simmons, 206 Mont. at 276, 670 P.2d at 1378, citing Data Disc, Inc. v. Systems Tech, Assoc, Inc. (9th Cir. 1977), 557 F.2d 1280, 1287.*

?13. The first part of the three-part test is whether MW Golden engaged in a transaction within the forum state, Montana, by which it purposely availed itself of the opportunity of conducting business within the forum. MW Golden argues that its purchase of the Swimlift from Spectrum was a condition unilaterally imposed by a third party, exempting it from Montana jurisdiction under this first prong of the test, citing *May v. Figgins* (1980), 186 Mont. 383, 607 P.2d 1132. The record, however, establishes that unlike the defendant in *May*, MW Golden was well aware of the necessary involvement of the forum state before it entered the contract; it was aware of the restriction that the Swimlift must be purchased from Montana's Spectrum when it bid on the Arapaho Community College swimming pool modification contract. This distinction between a knowing and an unknowing decision to enter a particular forum renders the unilateral act of a third party exception argued by MW Golden inapplicable in this case.

?14. The second part of the three-part test is not at issue. It is undisputed that Spectrum's claim results from MW Golden's forum-related activities.

?15. Proceeding to the third part of the test, we have identified the following factors for determining whether the exercise of jurisdiction is reasonable: the extent of the defendant's purposeful interjection into Montana; the burden on the defendant of defending in Montana; the extent of conflict with the sovereignty of the defendant's state; Montana's interest in adjudicating the dispute; the most efficient resolution of the controversy; the importance of Montana to the plaintiff's interest in convenient and effective relief; and the existence of an alternative forum. *Nelson*, 228 Mont. at 271-72, 742 P.2d at 450.

?16. MW Golden argues that unlike the defendants in other cases in which long arm jurisdiction has been found (*Parker Bros. Farms, Inc. v. Burgess* (1982), 197 Mont. 293, 642 P.2d 1063; *Prentice Lumber Co. v. Spahn* (1970), 156 Mont. 68, 474 P.2d 141; and *State ex rel. White Lumber Sales, Inc. v. Sulmonetti* (Or. 1968), 448 P.2d 571), it did not establish a course of dealing with the plaintiff by consummating multiple transactions over a

period of time. Here, there was only one transaction, albeit one accomplished by multiple phone calls and letters. Thus, MW Golden asserts that the extent of its purposeful interjection into Montana was minimal. However, it is clear that MW Golden purposefully interjected itself into Montana to the extent of contracting with Spectrum, and MW Golden has cited no clear authority to support its contention that the number of transactions is determinative of this issue.

¶17. A burden is placed upon MW Golden by forcing it to defend in Montana, to the extent that MW Golden's witnesses and the allegedly damaged Swimlift are located in Colorado. However, a similar burden would be placed upon Spectrum if Montana did not assume jurisdiction and Spectrum was forced to bring this action in Colorado.

¶18. No significant conflict with the sovereignty of the defendant's state has been established as a result of a Montana court exercising jurisdiction over MW Golden in relation to this contract.

¶19. Montana's interest in adjudicating the dispute is to assist a Montana corporate business in obtaining performance on a contract. MW Golden maintains that its order of the Swimlift had little "effect in the forum;" i.e., the importance to Montana of Spectrum's interest in convenient and effective relief in the form of recovering the $2,000 remaining due on the contract is negligible in the grand scheme of things. The amount in controversy is not a legal consideration for due process purposes, however.

¶20. The most efficient resolution of the controversy would arguably be in Colorado for the convenience of MW Golden's witnesses and because the Swimlift is located in Colorado; however, it is more convenient and thus most efficient for the plaintiff Montana corporation and its witnesses to sue here in Montana. The same reasoning applies with regard to the importance of Montana to the plaintiff's interest in convenient and effective relief. Finally, as to the seventh factor, there is no question that an alternative forum exists in Colorado.

¶21. After considering the above tests and factors in determining whether the exercise of jurisdiction over MW Golden in this cause comports with due process, we conclude that it does. For that reason, and because MW Golden has established minimum contacts with the State of Montana, we hold that the District Court properly had jurisdiction to decide this action. We therefore reverse the order of the District Court dismissing this case, and remand for further proceedings consistent with this Opinion.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ TERRY N. TRIEWEILER

/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART