FILED

12/31/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: OP 24-0061

OP 24-0061

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 320

SOUTHWEST DISTRIBUTING CO.,
D/B/A SWD URETHANE,

        Petitioner,

    v.

MONTANA NINETEENTH JUDICIAL
DISTRICT COURT, LINCOLN COUNTY,
THE HONORABLE MATTHEW J. CUFFE,
Presiding Judge,

        Respondent.

ORIGINAL PROCEEDING:     Petition for Writ of Supervisory Control
                              In and For the County of Lincoln, Cause No. DV-22-72
                              Honorable Matthew J. Cuffe, Presiding Judge

COUNSEL OF RECORD:

        For Petitioner:

                Christopher T. Sweeney, Bobbi K. Owen, Moulton Bellingham PC, Billings, Montana

        For Defendants North Idaho Insulation, LLC and John L. Holdeman:

                Randall J. Colbert, Emma L. Mediak, Michael D. Bybee, Garlington Lohn & Robinson, PLLP, Missoula, Montana

                          Decided: December 31, 2024

Filed:

_____
              Clerk

Justice Laurie McKinnon delivered the Opinion and Order of the Court.

¶1 Petitioner Southwest Distributing Co., d/b/a SWD Urethane (Southwest) seeks a writ of supervisory control over the Montana Nineteenth Judicial District Court, Lincoln County (Cause No. DV-22-72). On November 21, 2023, the District Court issued an order denying Southwest's motion to dismiss for lack of personal jurisdiction. Southwest maintains the District Court erred in concluding it could exercise personal jurisdiction over Southwest pursuant to M. R. Civ. P. 4(b)(1). At our invitation, North Idaho Insulation, LLC, and John L. Holdeman (collectively, North Idaho Insulation), one of the defendants and a third-party plaintiff in the case below, have responded in opposition to Southwest's petition. We also allowed Southwest to file a reply to North Idaho Insulation's response, which we have considered.

¶2 Southwest's Petition raises the following issues:

*1. Is this matter appropriate for a writ of supervisory control?*

*2. Did the District Court err when it ruled that it had specific personal jurisdiction over Southwest under M. R. Civ. P. 4(b)(1)(A) and 4(b)(1)(B)?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3 On May 9, 2022, Donald Fleming filed suit against Caribou Creek Log Homes, Inc. (Caribou Creek) and North Idaho Insulation. Fleming alleged he contracted with Caribou Creek to build a log shell structure on property Fleming owns in Troy, Montana. He later entered into a second agreement with Caribou Creek to transform the structure into a residence. Caribou Creek acted as the general contractor, subcontracting with North Idaho Insulation—an Idaho business that regularly installs insulation in northern Idaho,

2

northeastern Washington, and northwestern Montana—to install spray foam insulation in the structure.

¶4 In his Complaint and Demand for Jury Trial filed against Caribou Creek and North Idaho Insulation, Fleming alleged his residence was damaged by spray foam insulation that North Idaho Insulation installed. Fleming alleged the insulation was "improperly installed, mixed or formulated," causing significant structural deformation to the roof. Fleming further alleged that Holdeman inspected the structure, confirmed the roof was deformed, and agreed to repair the roof, but ultimately failed to do so. Fleming asserted claims against Caribou Creek, Holdeman, and North Idaho Insulation for negligence, violations of residential construction defect statutes, violations of the Montana Consumer Protection Act, and breach of statutory and implied warranties.

¶5 On August 18, 2022, North Idaho Insulation filed a third-party complaint against Southwest, alleging Southwest manufactured the spray foam at issue and sold it in a defective condition. While primarily seeking indemnification and contribution from Southwest, North Idaho Insulation also pled claims for breach of the warranties of merchantability and of fitness for a particular purpose.

¶6 Southwest is an Arizona corporation engaged in the business of manufacturing chemicals that, when correctly mixed together by contractors, form polyurethane spray foam insulation. Southwest is organized under the laws of Arizona and registered to do business in that state. Southwest is not licensed or registered to do business in Montana, does not have a registered agent for service of process in Montana, does not have an office or employees in Montana, and does not have a bank account or pay taxes in Montana.

3

Southwest generally sells its chemicals to third-party distributors who in turn sell the chemicals to contractors for use in residential or commercial construction. After selling its products to third-party distributors, Southwest is no longer involved in the sales of the product, and the third-party distributor controls the way the chemicals are sold and to whom. Southwest does not direct any advertising specifically to Montana, but it advertises its products nationally through magazines, websites, and social media. It marketed QuikShield 118XC, the product at issue here, as suitable for use in cold-weather states. Among the third-party distributors who have purchased products from Southwest is Insulation Distributors, Inc., a Minnesota corporation. On occasion, Southwest sells its products directly to contractors for use in construction projects but its primary sales are to third-party distributors. Southwest also employs five or six technicians who can assist contractors with questions or issues relating to Southwest's products. According to Southwest's records, between 2019 and November 2022, it sold its products to third-party distributors in Montana on 91 occasions and it sold its products directly to Montana contractors five times. However, it has no record of its technicians assisting anyone in Montana since 2019.

¶7 As to the facts in this case, it appears, based on invoices produced by Caribou Creek, that Southwest manufactured chemicals out-of-state, relevant here QuikShield 118XC; sold those chemicals to Insulation Distributors—a Minnesota-based entity; and Insulation Distributors in turn sold and shipped the chemicals to the State of Washington for pickup and delivery into Montana by North Idaho Insulation—an Idaho-based contractor. North Idaho Insulation transported the product to Troy, Montana.

4

¶8     Southwest moved the District Court to dismiss North Idaho Insulation's third-party complaint for lack of personal jurisdiction under M. R. Civ. P. 12(b)(2).  Southwest alleged it conducted limited business in Montana and North Idaho Insulation's claims did not arise from or relate to the business Southwest conducted in Montana.  It further argued that, even if the court concluded it had personal jurisdiction over Southwest, the exercise of such jurisdiction would offend due process.

¶9     The District Court held a hearing after the parties briefed the issue.  The court then ruled that it had specific personal jurisdiction over Southwest pursuant to M. R. Civ. P. 4(b)(1).  Southwest then filed this petition for writ of supervisory control, arguing that the District Court had erred as a matter of law.

**STANDARD OF REVIEW**

¶10    Supervisory control is an extraordinary remedy that may be invoked when the case involves purely legal questions and urgent or emergency factors make the normal appeal process inadequate.  M. R. App. P. 14(3).  The case must meet one of three additional criteria: (a) the other court is proceeding under a mistake of law and is causing a gross injustice; (b) constitutional issues of state-wide importance are involved; or (c) the other court has granted or denied a motion for substitution of a judge in a criminal case.  M. R. App. P. 14(3)(a)-(c).  Whether supervisory control is appropriate is a case-by-case decision.  *Stokes v. Mont. Thirteenth Judicial Dist. Court*, 2011 MT 182, ¶ 5, 361 Mont. 279, 259 P.3d 754 (citation omitted).  Consistent with Rule 14(3), this Court refrains from exercising supervisory control when the petitioner has an adequate remedy of appeal.  *Volkswagen Aktiengesellschaft v. Mont. First Judicial Dist. Court*, No. OP 20-0171, 401

5

Mont. 556, 472 P.3d 1151 (Aug. 25, 2020). The petitioner bears the burden of convincing this Court to issue a writ. *Innovative Contr., LLC v. Mont. Twentieth Judicial Dist. Court*, No. OP 23-0153, 411 Mont. 393 (Mar. 9, 2023).

¶11 We review de novo a district court's decision on a motion to dismiss for lack of personal jurisdiction, construing the complaint in the light most favorable to the plaintiff. *Buckles v. Cont'l Res., Inc.*, 2017 MT 235, ¶ 9, 388 Mont. 517, 402 P.3d 1213 (quotation omitted). Motions to dismiss should not be granted unless, taking all well-pled allegations of fact as true, it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief. *Buckles*, ¶ 9 (citation omitted). We review a district court's findings of fact and conclusions of law regarding personal jurisdiction to determine whether the findings are clearly erroneous and whether the conclusions are correct. *Buckles*, ¶ 9 (citation omitted).

**DISCUSSION**

¶12 *1. Is this matter appropriate for a writ of supervisory control?*

¶13 As a threshold matter, we must first determine whether to accept Southwest's petition. Southwest asserts that this Court has previously accepted supervisory control in cases involving questions of personal jurisdiction. *E.g. Groo v. Mont. Eleventh Judicial Dist. Court*, 2023 MT 193, 413 Mont. 415, 537 P.3d 111; *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 2019 MT 115, 395 Mont. 478, 443 P.3d 407 (aff'd *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351, 141 S. Ct. 1017 (2021)). We have noted that, in the personal jurisdiction context, urgency may render the appeal process inadequate because a district court must have power over the parties in a proceeding to

6

afford adequate relief. *Gateway Hosp. Grp. Inc. v. Phila. Indem. Ins. Co.*, 2020 MT 125, ¶ 4, 400 Mont. 80, 464 P.3d 44 (citing *Ford Motor Co.,* ¶ 7). "An error in the determination of personal jurisdiction could result in the later nullification of extensive litigation efforts affecting many individuals statewide." *Gateway Hosp. Grp.*, ¶ 4. Thus, the remedy of appeal may be inadequate.

¶14 In this case, the issue before the Court is purely legal. M. R. App. P. 14(3). Moreover, it involves a constitutional issue of statewide importance as Southwest's due process rights are at issue and this decision will further clarify the scope of specific personal jurisdiction in Montana. M. R. App. P. 14(3)(b); *see also Ford Motor Co.*, ¶ 7. We therefore conclude that, pursuant to this Court's authority to issue, hear and determine writs found in Article VII, Section 2, of the Montana Constitution, and our discretionary authority to accept or reject writs of supervisory control under M. R. App. P. 14(3), it is appropriate to consider this petition for writ of supervisory control.

¶15 *2. Did the District Court err when it ruled that it had personal jurisdiction over Southwest under either M. R. Civ. P. 4(b)(1)(A) or 4(b)(1)(B)?*

¶16 Having determined this matter may be susceptible to a writ of supervisory control, we next consider the substantive question of whether the District Court erred when it concluded it had specific personal jurisdiction over Southwest. We review de novo a district court's decision on a motion to dismiss for lack of personal jurisdiction, construing the complaint in the light most favorable to the plaintiff. *Buckles*, ¶ 9 (quotation omitted).

¶17 Personal jurisdiction may be general or specific. *DeLeon v. BNSF Ry. Co.*, 2018 MT 219, ¶ 7, 392 Mont. 446, 426 P.3d 1. General purpose jurisdiction exists when a

7

corporation's affiliations with Montana are so continuous and systematic as to render it essentially "at home" in Montana. *DeLeon*, ¶ 8 (citing *BNSF Ry. v. Tyrell*, 581 U.S. 402, 413, 137 S. Ct. 1549, 1559 (2017); *Daimler AG v. Bauman*, 571 U.S. 117, 138-39, 134 S. Ct. 746, 761 (2014); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851 (2011)). A corporation is at home where it is incorporated or where it maintains a place of business; or, in exceptional cases, where its continuous corporate operations are "so substantial and of such a nature as to justify suit . . . *on causes of action arising from dealings entirely distinct from those activities*." *DeLeon*, ¶ 8 (quoting *Daimler*, 571 U.S. at 138-39, 134 S. Ct. at 761 (emphasis and omission in original); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318, 66 S. Ct. 154, 159 (1945)). It is undisputed that Southwest is not incorporated in Montana, does not have a place of business in Montana, and that Southwest does not conduct operations in Montana which are so substantial and of such a nature as to justify suit on a cause distinct from its normal operations. Thus, we consider whether it may be subject to specific jurisdiction.

¶18 A Montana court may assert specific personal jurisdiction over a nonresident defendant when the plaintiff's cause of action *arises from* the doing of any act set forth in M. R. Civ. P. 4(b)(1). Specific, or "case-linked," jurisdiction depends on an affiliation between the forum and the underlying controversy, principally an activity or occurrence that takes place in the forum state and is therefore subject to the state's regulation. *Tackett v. Duncan*, 2014 MT 253, ¶ 19, 376 Mont. 348, 334 P.3d 920 (citing *Walden v. Fiore*, 571 U.S. 277, 283, 134 S. Ct. 1115, 1121 n.6 (2014); *Goodyear*, 564 U.S. at 919, 131 S. Ct. at 2851). Specific jurisdiction focuses on the relationship among the defendant, the forum,

8

and the litigation and depends on whether the defendant's suit-related conduct created a substantial connection with the forum state. *Tackett*, ¶ 19 (quotation omitted). In this case, the District Court concluded it had specific personal jurisdiction over Southwest under either M. R. Civ. P. 4(b)(1)(A) or 4(b)(1)(B).

¶19 Pursuant to Rule 4(b)(1), Montana courts can exercise specific jurisdiction over any person if the claim "arises from" that person's transaction of business within the state. The Rule provides:

> All persons found within the state of Montana are subject to the jurisdiction of Montana courts. Additionally, any person is subject to the jurisdiction of Montana courts as to any claim for relief arising from the doing personally, or through an employee or agent, of any of the following acts:
>
> (A) the transaction of any business within Montana;
> (B) the commission of any act resulting in accrual within Montana of a tort action;
> (C) The ownership, use, or possession of any property, or risk located within Montana at the time of contracting;
> (D) contracting to insure any person, property, or risk located within Montana at the time of contracting;
> (E) entering into a contract for services to be rendered or for materials to be furnished in Montana by such person;
> (F) acting as director, manager, trustee, or other officer of a corporation organized under the laws of, or having its principal place of business within, Montana;
> (G) acting as personal representative of any estate within Montana.

M. R. Civ. P. 4(b)(1). When determining whether specific or "case-linked" jurisdiction exists, the court considers the nature and extent of the nonresident defendant's contact with the state in relation to the claim or controversy alleged. The limits on a state's jurisdictional authority "principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Walden*, 571 U.S. at 285, 135 S. Ct. at 1122

9

(citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92, 100 S. Ct. 559, 564 (1980). Thus, the relationship among the defendant, the forum, and the litigation "must arise out of contacts that the defendant *himself* creates with the forum State." *Tackett*, ¶ 32 (quoting *Walden*, 571 U.S. at 277, 134 S. Ct. at 1118 (emphasis in original)). The defendant-focused inquiry cannot be satisfied by demonstrating contacts between the plaintiff or third parties and the forum state. *Tackett,* ¶ 32 (citation omitted). The "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 417, 104 S. Ct. 1868, 1873 (1984). Therefore, "[h]owever significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive in determining whether the exercise of jurisdiction over the defendant is proper." *Tackett*, ¶ 32. As established in *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 137 S. Ct. 1773 (2017), "there must be 'an affiliation between the forum and the underlying controversy, principally [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers*, 582 U.S. at 262, 1375 S. Ct. at 1780 (quoting *Goodyear*, 564 U.S. at 919, 131 S. Ct. at 2851).

¶20     The Supreme Court made clear in *Walden* that the plaintiff cannot be the only link between the defendant and the forum state; "[r]ather it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 285, 134 S. Ct. at 1122. A defendant may only be haled into court in a forum state based on his own affiliation with the state, "not based on the unilateral

activity of a plaintiff or on the random, fortuitous, or attenuated contacts the defendant has with other persons affiliated with the state." *Tackett*, ¶ 33 (citing *Walden*, 571 U.S. at 286, 134 S. Ct. at 1123).

¶21    We first considered whether a Montana court could exercise long-arm jurisdiction over a foreign business under M. R. Civ. P. 4(b)(1)(A) ("transaction of any business within Montana") in *Prentice Lumber v. Spahn*, 156 Mont. 68, 474 P.2d 141 (1970).  In that case, Spahn, who ran a retail lumber and construction business in Wisconsin, purchased lumber from Prentice Lumber Co., Inc., a Montana corporation located in Missoula, on sixteen occasions.  *Prentice Lumber*, 156 Mont. at 69, 474 P.2d at 141.  This Court concluded that Spahn had transacted business within Montana such that long-arm jurisdiction could be exercised where he directly ordered lumber from Prentice once and directly paid Prentice on several occasions when he had placed the order to Prentice through an intermediary. *Prentice Lumber*, 156 Mont. at 69, 75, 474 P.2d at 141, 144.  Because Spahn had contracted directly with a Montana business for the purchase of lumber, we concluded Spahn had purposely availed himself of the opportunity to transact business in Montana.  *Prentice Lumber*, 156 Mont. at 74, 474 P.2d at 144.  Here, there is no evidence that Southwest contracted with any party located in Montana.

¶22    The United States District Court for the District of Montana later relied on *Prentice Lumber* in considering whether it could exercise jurisdiction over an Illinois corporation for breach of several warranties for allegedly defective farming equipment sold to a corporation based in Geraldine, Montana.  *Great Plains Crop Mgmt., Inc. v. Tryco Mfg. Co., Inc.*, 554 F. Supp. 1025 (D. Mont. 1983).  In that case, the president of Great Plains

11

Crop Management, Inc. (Great Plains) telephoned Tryco Manufacturing Company, Inc. (Tryco), an Illinois corporation, to inquire about Tryco's fertilizer spreading equipment after he saw Tryco's advertisement in an agricultural magazine. *Great Plains*, 554 F. Supp. at 1026. After speaking with Great Plains' president, a Tryco sales representative mailed him a brochure about Tryco's products. *Great Plains*, 554 F. Supp. at 1026. The parties then exchanged numerous telephone calls. *Great Plains*, 554 F. Supp. at 1026. Great Plains' president visited Tryco's Illinois facility at Tryco's invitation and, while there, ordered one of Tryco's fertilizer-distribution machines. *Great Plains*, 554 F. Supp. at 1026. Tryco shipped that machine to Montana, and Great Plains later ordered two additional pieces of machinery manufactured by Tryco that Tryco also shipped to Montana. A warranty dispute arose and Great Plains filed suit in U.S. District Court in Montana. *Great Plains*, 554 F. Supp. at 1026.

¶23 After Tryco moved to dismiss the complaint for lack of jurisdiction, the court considered whether, by reference to M. R. Civ. P. 4(b)(1)(A), it could exercise personal jurisdiction over Tryco. *Great Plains*, 554 F. Supp at 1027-28. Relying in part on *Prentice Lumber*, the court concluded it had jurisdiction because Tryco invited Great Plains' president to visit its Illinois facility with the hope of selling Great Plains a piece of machinery to use in Montana; arranged shipments of machinery into Montana; and wrote a letter to Great Plains to solicit another sale. *Great Plains*, 554 F. Supp. at 1027.[1]

---

[1] The Dissent faults this Court for distinguishing *Great Plains*. Dissent, ¶¶ 43-44. However, in *Great Plains* the court found that the claim for relief *did* arise out of the defendant's act of transacting business in Montana; that is, Great Plains sold and shipped a fertilizer spreader directly into Montana to a Montana purchaser. The court was careful to distinguish that the inquiry did

12

¶24 Our case law that concludes jurisdiction exists under M. R. Civ. P. 4(b)(1)(A), like *Prentice Lumber*, involves situations in which the party seeking dismissal had direct contact with a Montana plaintiff when transacting business. *E.g. Nelson v. San Joaquin Helicopters*, 228 Mont. 267, 742 P.2d 447 (1987) (California company transferred a bad debt as payment for a helicopter purchased from Montana resident); *Spectrum Pool Prods., Inc. v. MW Golden, Inc.*, 1998 MT 283, 291 Mont. 439, 968 P.2d 728 (Colorado corporation purchased device from Montana manufacturer for use in Colorado, returned the product to Montana for repairs, and refused to fully pay for the product and its repairs after the manufacturer shipped it back to Colorado); *B.T. Metal Works v. United Die & Mfg. Co.*, 2004 MT 286, 323 Mont. 308, 100 P.3d 127 (Montana company resold latches that it purchased from an Ohio company that later used the Montana company's design specifications to bid against it for a contract with the Montana company's customer); *Grizzly Sec. Armored Express, Inc. v. Armored Group, LLC*, 2011 MT 128, 360 Mont. 517, 255 P.3d 143 (Montana business purchased armored vehicles from Arizona company and the Arizona company solicited Montana companies to repair those vehicles).

¶25 In contrast, this Court held the defendant had not transacted business in Montana in *Bunch v. Lancair Int'l Inc.*, 2009 MT 29, 349 Mont. 144, 202 P.3d 784. In *Bunch*, a pilot was killed in an airplane crash in Montana that occurred after his plane lost power. The pilot's wife sued appellees, corporations that were located in Oregon, Delaware, and

---

not concern whether Great Plains was "found within" Montana based upon its unrelated business transactions and advertising, as the Dissent argues here, because such an inquiry was relevant only for purposes of determining general jurisdiction. *Great Plains*, 554 F. Supp at 1027 n.4.

California. *Bunch*, ¶¶ 2-4. On appeal, this Court held that the district court did not err by granting appellees' motions to dismiss for lack of personal jurisdiction because it properly analyzed the question under M. R. Civ. P. 4(b)(1), and correctly determined that exercising jurisdiction over appellees would not comport with due process. The district court found that none of the appellees, except for the engine manufacturer, had made any sales in or had contacts with Montana, and therefore none of them could reasonably be expected to be haled into court in Montana due solely to the unilateral act of a consumer. *Bunch*, ¶ 9. Further, even if the engine manufacturer participated in a national chain of distribution, including Montana, it would be unreasonable to submit it to jurisdiction in Montana since the plane was not purchased in Montana and none of the other appellees had any connections to Montana aside from the pilot's unilateral actions. See *Bunch*, ¶¶ 24, 28, 30, 55 (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano City.*, 480 U.S. 102, 112, 107 S. Ct. 1026, 1032 (1987), for the proposition that "the placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State").

¶26    Here, Southwest did not sell North Idaho Insulation the product at issue, nor did North Idaho Insulation purchase the product from a third-party distributor within Montana. Southwest's marketing of certain products it manufactured, including QuikShield 118XC, as designed for use in cold-weather states is insufficient to establish that Southwest transacted business in Montana. Southwest appears to have transacted business with Insulation Distributors, a Minnesota entity; who then transacted business with North Idaho Insulation, an Idaho entity; who then transacted business with Caribou Homes, a Montana

14

entity. However, Southwest never transacted any business in Montana which is linked to the underlying claims. That Southwest may have consummated *other* sales in Montana with Montana distributors or Montana contractors is irrelevant to the case-link inquiry required under a specific jurisdiction analysis. To conclude otherwise would blur the distinction between general jurisdiction and specific jurisdiction inquiries, such that even though a party is not "at home" in the forum State, they could nonetheless be found to have case-linked jurisdiction on a general jurisdiction basis. For a specific jurisdiction inquiry, the focus is not on the amount of *other* business from which the defendant benefits in the forum state. The relationship among Southwest, Montana, and this litigation must arise out of contacts that Southwest itself created with Montana. [2]

---

[2] The Dissent maintains that the Court "has drastically minimize[ed] Southwest's business conduct in Montana . . . ," and that "direct sales include at least 96 transactions directly to a Montana purchaser between 2019 and November 2022—amounting to a sale directly from Southwest to a Montana consumer averaging at least twice a month for over three years." Dissent, ¶ 42. This is the premise upon which the Dissent would find specific personal jurisdiction. There are several problems with the Dissent's analysis. First, the sales were to third-party distributors who are not involved in the instant litigation and did not sell the product at issue here. Personal jurisdiction cannot be demonstrated by contacts between the plaintiff and third parties. *Tackett*, ¶ 32. Second, to the extent Southwest sold products on five occasions directly to a Montana purchaser, none of those transactions are the basis of the dispute here. The current dispute relates to the sale of insulation to North Idaho Insulation from the Minnesota based entity—Insulation Distributors— and does not involve a direct sale of insulation by Southwest to a Montana purchaser. Third, it appears that the Dissent is focusing on the volume of one of those five sales to a Montana contractor when it refers to "28 drums" sold to a Montana contractor. Dissent, ¶ 42. However, the *volume* of a single sale to a Montana contractor unrelated to the business transacted here cannot serve as a basis for case-linked jurisdiction and does not equate to volume or quantity of doing business in Montana. The Dissent has confused the requirement that the specific claim must "arise from . . . the transaction of any business within Montana . . . ." In doing so, the Dissent fails to make the crucial distinction between general jurisdiction or "at home" jurisdiction, and a claim *arising from* a business transaction between Southwest and Caribou Creek—the Montana plaintiff. The Dissent finds specific jurisdiction based on the volume of insulation that finds its way into Montana; yet no party argues here that general jurisdiction exists over Southwest.

¶27 We therefore conclude that the underlying claims for indemnification and breach of warranties did not arise from Southwest's transacting business in Montana. Assuming North Idaho Insulation used Southwest's chemicals for insulation on Fleming's residence, North Idaho Insulation did not purchase those chemicals in Montana. Specific jurisdiction requires a claim-specific analysis and North Idaho Insulation's causes of action do not arise from Southwest transacting business in Montana. Southwest is not subject to the jurisdiction of Montana courts under M. R. Civ. P. 4(b)(1)(A).

¶28 The District Court also concluded that Southwest is subject to specific jurisdiction under Montana's long arm statute because it committed an act "resulting in the accrual within Montana of a tort action." M. R. Civ. P. 4(b)(1)(B). In this case, North Idaho Insulation has brought third-party claims against Southwest alleging it is entitled to indemnification and/or contribution for damages North Idaho Insulation may have to pay Fleming. The first-party suit filed by Fleming asserts claims against Caribou Creek and North Idaho Insulation for negligence, breach of contract, consumer protection violations, and violation of various construction defect statutes. However, the complaint relevant to determining whether Southwest is subject to specific jurisdiction is the third-party complaint filed by North Idaho Insulation against Southwest. The record does not establish whether the contract for purchase of the foam insulation was between Southwest and Insulation Distributors, Southwest and North Idaho Insulation, or North Idaho Insulation and Insulation Distributors. What is clear, though, is that the contract was not between Southwest and a Montana entity. And what is equally clear is that a breach of warranty and claim of indemnification, which is the litigation upon which North Idaho Insulation

16

asserts jurisdiction over Southwest, necessarily focuses on the relationship between the buyer and the seller; here, neither of which involved a Montana entity.

¶29 North Idaho Insulation cannot satisfy the requirements of M. R. Civ. P. 4(b)(1)(B), because that subsection requires the "accrual of a tort" in Montana. First, North Idaho Insulation maintains that Southwest manufactured a defective product and that personal jurisdiction exists over a manufacturer for a product liability claim. North Idaho Insulation argues Southwest placed QuikShield 118XC into the stream of commerce, allegedly causing the accrual of a tort in Montana. Such an argument (even after recharacterizing the North Idaho Insulation's third-party complaint as a product liability complaint) relies on the stream-of-commerce theory to satisfy subsection (1)(B). The stream-of-commerce theory contends that specific jurisdiction exists when a defendant has injected its goods into the forum state indirectly through the so-called stream-of-commerce, making it foreseeable that one of the defendant's goods will end up in the forum state.

¶30 The Supreme Court has twice rejected this theory. *See J. McIntrye Mach., Ltd. v. Nicastro*, 564 U.S. 873, 882-83, 131 S. Ct. 2780, 2788 (2011); *Asahi*, 480 U.S. at 113, 107 S. Ct. at 1033. Because it is the defendant's activities, not its expectations, that empower a state's courts to subject a party to judgment, it is not enough that Southwest might have predicted its chemicals used for insulation would reach Montana. *Asahi*, 480 U.S. at 112-13, 107 S. Ct. at 1032. Plaintiffs must instead rely "on some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of the law." *Asahi*, 480 U.S. at 109, 107 S. Ct. at 1031.

17

¶31    North Idaho Insulation's reliance on *Ford Motor Co.* is also misplaced.  In *Ford Motor Co.*, we held that the accrual of the tort undoubtedly occurred in Montana: the accident occurred while Gullett was driving on a Montana roadway.  *Ford Motor Co.*, ¶¶ 11-12.    There was no dispute in *Ford Motor Co.* that jurisdiction existed under Montana's long-arm statute; that is, that the first step of the two-part inquiry was satisfied.  Our analysis thus focused on the second step of the inquiry: whether exercising personal jurisdiction over Ford comported with federal due process principles.  *Ford Motor Co.*, ¶ 12.  In considering whether exercising jurisdiction over a defendant comported with due process, we applied factors enunciated in *Simmons v. State*, 206 Mont. 264, 276, 670 P.2d 1372, 1378 (1983).  We considered whether: (1) the nonresident defendant purposely availed itself of the privilege of conducting activities in Montana; (2) the plaintiff's claims arise out of or relate to the defendant's forum-related activities; and (3) the exercise of personal jurisdiction is reasonable.  *Ford Motor Co.*, ¶ 12 (citing *Simmons*, 206 Mont. at 276, 670 P.2d at 1378).  Our discussion in *Ford Motor Co.* only occurred because we had first concluded the accident had occurred in Montana and therefore the tort—design defect—accrued in Montana.  Next, we turned to due process considerations.  Regarding the first *Simmons* factor, we determined, based on the stream-of-commerce plus theory, that it was fair to hale Ford into Montana courts because Ford purposefully availed itself of the privilege of conducting activities in Montana.  *Ford Motor Co.*, ¶ 22.  Regarding the second *Simmons* factor, whether the claims arose out of Defendant's forum-related activities, we held:

18

> Ford advertises, sells, and services vehicles in Montana. Ford makes it convenient for Montana residents to drive Ford vehicles by offering maintenance, repair, and recall services in Montana. Gullett's use of the Explorer in Montana is tied to Ford's activities of selling, maintaining, and repairing vehicles in Montana. Further, Ford could have reasonably foreseen the Explorer—a product specifically built to travel—being used in Montana. We accordingly conclude [the Estate's] claims 'relate to' Ford's Montana activities.

*Ford Motor Co.*, ¶ 23. Regarding the third *Simmons* factor, whether it is reasonable for the court to exercise personal jurisdiction, we noted, first, a presumption that it was reasonable when a defendant is found to have purposefully availed itself of the privilege of conducting activities in this State. *Ford Motor Co.*, ¶ 28. We concluded that Ford had failed to present a compelling case that exercising jurisdiction over it would be unreasonable. *Ford Motor Co.*, ¶ 30.

¶32 Importantly, these considerations became relevant only after we first determined that jurisdiction existed under a state's long arm statute. The Supreme Court concluded in *Ford Motor Co.*, that exercising specific jurisdiction over Ford was reasonable because Ford conducted extensive business in Montana and "'enjoy[ed] the benefits and protection of [Montana] laws—the enforcement of contracts, the defense of property, the resulting formation of effective markets.'" *Ford Motor Co.*, 592 U.S. at 367, 141 S. Ct. at 1030-31 (quoting *Int'l Shoe*, 326 U.S. at 319, 66 S. Ct. 154). Although *Ford Motor Co.* does not guide our consideration here because it concerns the second prong of the specific jurisdiction analysis, we note that, in contrast to Ford Motor Co.'s extensive contacts with Montana which facilitated its business of selling vehicles and that it received the benefits and protections of Montana laws, Southwest is not a global company with extensive

operations nationwide. Southwest is not registered to do business in Montana and has relatively few prior Montana customers. *Ford Motor Co.* is limited to consideration of whether the exercise of personal jurisdiction comports with constitutional due process. We have not previously adopted a stream-of-commerce plus theory as a basis for establishing the "accrual of a tort" under Rule 4(b)(1)(B) of Montana's long arm statute and, indeed, rejected such an analysis in *Bunch*.

¶33 Finally, we cannot ignore that, here, there has not been a tort alleged against Southwest. The third-party complaint filed by North Idaho Insulation alleges a breach of warranty and request for indemnification, which are not torts. Indeed, other sections of Rule 4 are designed to cover those situations where long-arm jurisdiction is appropriate but for which no tort has been alleged. *See* M. R. Civ. P. 4(1)(A), (C), (D), (F), (G) ("transacting any business"; "the ownership, use, or possession of any property, or risk located within Montana"; "contracting to insure any person, property, or risk located within Montana"; "contract for services to be rendered in . . . Montana"; "acting as director, manager, trustee, or other officer of a corporation . . .[in]. . . Montana"; and "acting as a personal representative of any estate within Montana.").

¶34 Montana courts can only exercise personal jurisdiction over a party not "at home" when one of the requirements for the exercise of specific jurisdiction is present. After considering the two relevant bases for exercising specific personal jurisdiction—transacting business in Montana and the accrual of a tort in Montana—we conclude there is not a basis under Montana's long arm statute to exercise specific jurisdiction over

20

Southwest. Accordingly, we do not address whether the exercise of jurisdiction comports with the federal right to due process.

**CONCLUSION**

¶35   This Petition for a Writ of Supervisory Control is GRANTED.

¶36   The District Court's November 21, 2023 Opinion and Order Re: Motion to Dismiss for Lack of Personal Jurisdiction is REVERSED.

¶37   The Court's Order entered May 21, 2024, STAYING these proceedings in District Court is LIFTED and this matter is REMANDED to the District Court for further proceedings consistent with this Opinion and Order.

The Clerk is directed to send a copy of this Order to all counsel of record in this matter and in Nineteenth Judicial District Court Cause No. DV-22-72, and to the Honorable Matthew J. Cuffe, presiding District Judge.

Dated this 31st day of December 2024.

/S/ LAURIE McKINNON

We Concur:

/S/ JIM RICE
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR

Chief Justice Mike McGrath, dissenting.

¶38   I dissent. I would affirm the District Court's determination that Southwest is subject to specific personal jurisdiction under M. R. Civ. P. 4(b)(1)(A) because it transacts business

21

within Montana. I would further conclude that the exercise of personal jurisdiction in this instance comports with due process.

¶39 The Majority construes the "arising from" language of M. R. Civ. P. 4(b)(1) to require "a claim-specific analysis" of Southwest's transaction of business with North Idaho Insulation. However, the United States Supreme Court has clarified that *Bristol-Myers* does not "frame[] the specific jurisdiction inquiry as always requiring proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct." *Ford Motor Co.*, 592 U.S. at 362, 141 S. Ct. at 1026.

¶40 Although *Ford Motor Co.* concerned the accrual of a tort under M. R. Civ. P. 4(b)(1)(B), it applies to a claim of specific jurisdiction arising out of M. R. Civ. P. 4(b)(1)(A) because the "arising from" language applies to all the subcategories of M. R. Civ. P. 4(b)(1). After a Montana resident died as a result of a motor vehicle accident in a Ford Explorer that was designed in Michigan, manufactured in Kentucky, and originally sold in Washington, Ford argued its business activities in Montana were insufficient to confer specific jurisdiction because its business conduct in Montana did not give rise to this particular claim. *Ford Motor Co.*, 592 U.S. at 356-57, 141 S. Ct. at 1023. Finding that Ford had systematically served a market for the Ford Explorer in Montana—even if it did not design, sell, or manufacture this particular Ford Explorer in Montana—the Court perceived a strong relationship among Ford, Montana, and the litigation: the essential foundation of specific jurisdiction. *Ford Motor Co.*, 592 U.S. at 364-65, 141 S. Ct. at 1028 (citation and quotation omitted). Similarly here, this Court should look to the relationship between Southwest, Montana, and the litigation. Just as Ford did not

22

design, sell, or manufacture that particular Ford Explorer in Montana, Southwest did not design, sell, or manufacture the particular batch of QuikShield 118XC that North Idaho Insulation installed in Fleming's home in Montana. Ford "serve[d] a market for a product in the forum State and the product malfunction[ed] there." *Ford Motor Co.*, 592 U.S. at 363, 141 S. Ct. at 1027. Likewise, Southwest served a market for a spray insulation suitable for cold-weather climates and its product allegedly malfunctioned here. As *Ford Motor Co.* illustrates, it is of no import that in the present case, Southwest did not sell this particular batch of QuikShield 118XC in Montana, because it had systematically served a market for its products, including this particular product, in Montana, as evidenced by the numerous sales it made directly into Montana during the time at issue.

¶41     These numerous sales, however, are not reflected in the Majority Opinion, which asserts that Southwest only sells its products directly to contractors "on occasion" and that its "primary sales" are to third-party distributors. The Majority drastically minimizes Southwest's business conduct in Montana. The sales to third-party distributors include third-party distributors within Montana and the "occasional" direct sales include at least 96 transactions directly to a Montana purchaser between 2019 and November 2022—amounting to a sale directly from Southwest to a Montana consumer averaging at least twice a month for over three years. Notably, during the timeframe that North Idaho Insulation installed QuikShield 118XC in Fleming's home, Southwest's Montana distributor sold 28 drums of QuikShield 118XC to a Montana contractor.

¶42     By focusing only on Southwest's contact with North Idaho Insulation, the Majority undervalued the extent of business Southwest conducts in Montana to conclude that

23

jurisdiction could not be had under M. R. Civ. P. 4(b)(1)(A). *Grizzly Sec. Armored Express*, ¶ 23 (citing *Bunch*, ¶ 18) (specific jurisdiction comports with Rule 4(b)(1)(A) if the nonresident defendant conducts substantial business in Montana). Southwest consummated significantly more transactions in Montana than occurred in other cases in which we found jurisdiction under M. R. Civ. P. 4(b)(1)(A): 16 transactions in *Prentice Lumber*; three transactions in *Great Plains*; one complex and protracted transaction in *Nelson*; two transactions, consisting of an initial sale of a product and a subsequent repair of that product, in *Spectrum Pool Prods.*; 22 separate shipments of product in *B.T. Metal Works*; and one purchase consisting of two motor vehicles in *Grizzly Sec. Armored Express*.

¶43  I further believe that, in addition to discounting Southwest's significant sales directly into Montana, the Majority disregards similarities between the facts of this case and other cases in which this Court concluded that specific jurisdiction existed by virtue of the business the defendant foreign entity conducted within Montana. As the District Court explained in its ruling, Southwest provides advertising and products in Montana through its Montana distributor as well as supplying its products, including this specific product, directly to contractors in Montana. The Majority discusses *Great Plains*, in which the U.S. District Court determined that specific jurisdiction was proper over an Illinois corporation under M. R. Civ. P. 4(b)(1)(A), but omits the facts that are analogous to the present case, thus making *Great Plains* appear distinguishable. However, in *Great Plains* the U.S. District Court found it significant that Tryco had advertised in an agricultural magazine that could reasonably be expected to reach agriculturally oriented states like Montana. The

24

U.S. District Court explained, "the facts of this case make it apparent that Tryco's business activity in Montana was considerable, and that its ambitions extended beyond the Illinois border." *Great Plains*, 554 F. Supp. at 1027. This is similar to the present case where Southwest advertised its products through magazines, websites, and social media and specifically marketed QuikShield 118XC for cold-weather states like Montana—ambitions that clearly extend beyond the Arizona border.

¶44 For these reasons, I would conclude that personal jurisdiction exists under M. R. Civ. P. 4(b)(1)(A). The record demonstrates that Southwest maintained significant business contacts with Montana and it marketed the product at issue specifically to the Montana market for installation in Montana structures.

¶45 I would also conclude that exercising personal jurisdiction over Southwest would comport with traditional notions of fair play and substantial justice embodied in the Due Process Clause of the Fourteenth Amendment. *DeLeon*, ¶ 10 (citations and internal quotation marks omitted). Where a defendant has deliberately engaged in significant activities within a state, or has created continuing obligations between itself and residents of the forum, it has manifestly availed itself of the privilege of conducting business there, and because its activities are shielded by the benefits and protections of the forum's laws, it is presumptively not unreasonable to require it to submit to the burdens of litigation in that forum as well. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76, 105 S. Ct. 2174, 2184 (1985) (citations and internal quotations omitted); *Ford Motor Co.*, 2019 MT 115, ¶ 28 (citing *B.T. Metal Works*, ¶ 34) ("After finding that a defendant purposefully availed itself of the privilege of conducting activities, we presume that the exercise of

25

personal jurisdiction is reasonable. A defendant can only overcome that presumption by presenting a compelling case that exercising jurisdiction would be unreasonable.").

¶46 The reasonableness analysis generally depends on an examination of factors that illustrate the concept of fundamental fairness, such as: (1) the extent of the defendant's purposeful interjection into Montana; (2) the burden on the defendant of defending in Montana; (3) the extent of conflict with the sovereignty of the defendant's state; (4) Montana's interest in adjudicating the dispute; (5) the most efficient resolution of the controversy; (6) the importance of Montana to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Ford Motor Co.*, 2019 MT 115, ¶ 29 (citations omitted).

¶47 In considering these factors, the District Court found: (1) Southwest purposefully interjected its business into Montana by selling its products to distributors and contractors in Montana and by advertising its products in Montana, while specifically targeting QuikShield 118XC to cold-weather states like Montana; (2) Southwest will face some hardship having to defend in Montana; (3) Southwest did not assert any conflict between Montana and Arizona; (4) Montana has a strong interest in adjudicating the dispute because the alleged harm occurred to a Montana home owned by a Montana resident; (5) the controversy may be efficiently resolved in Montana as that is the place where the alleged harm occurred; (6) Montana is important to both Fleming's and North Idaho Insulation's interests in convenient and effective relief; and (7) while an alternate forum exists in Arizona, the alleged harm occurred in Montana and the evidence is located in Montana. It

then concluded the factors weighed in favor of imposing specific personal jurisdiction over Southwest in this case.

¶48    I would agree with the District Court as to its application of these factors and conclude that exercising personal jurisdiction over Southwest through M. R. Civ. P. 4(b)(1)(A) does not offend traditional notions of fair play and substantial justice. *Simmons*, 206 Mont. at 276, 670 P.2d at 1378.


/S/ MIKE McGRATH


Justices Beth Baker and James Jeremiah Shea join in the dissenting Opinion of Chief Justice Mike McGrath.


/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA